## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF MONTANA

| | |
|---|---|
| In re | |
| **GARY JOHN HETTICK**, | Case No. **04-60081-7** |
| Debtor. | |
| **DARCY M. CRUM**, | |
| Plaintiff. | |
| -vs- | |
| **KAYE TOMLINSON, EMPLOYERS MUTUAL CASUALTY COMPANY, PETIT, HOCK & STRAUCH, PLLP**, and **PETIT & STRAUCH, PLLP (DISMISSED)**, | Adv No. **08-00063** |
| Defendants. | |

## MEMORANDUM OF DECISION;
## PROPOSED FINDINGS OF FACT
## & CONCLUSIONS OF LAW

At Butte in said District this 25th day of February, 2009.

Trustee/Plaintiff Darcy M. Crum ("Crum") initiated this adversary proceeding to recover property of the estate. Several matters are pending, including: Defendant Employers Mutual Casualty Company's ("EMC") motion to determine that claims against EMC are non-core proceedings and to refer them to the federal district court (Docket No. 9) and demand for jury trial (Docket No. 10); EMC's motion to dismiss counts Four and Five of Plaintiff's complaint

1

under FED. R. BANKR. P. 7012(b), incorporating FED.R.CIV.P. 12(b)(6), for failure to state a claim upon which relief can be granted (Docket No. 11); EMC's motion for summary judgment (Docket No. 12); Defendant Petit, Hock & Strauch, P.L.L.P.'s ("PHS") motion for summary judgment (Docket No. 40) and its demand for jury trial (Docket No. 23); and Defendant Kaye Tomlinson's ("Tomlinson") motion for summary judgment (Docket No. 48).  The Plaintiff Crum filed objections to the motions to dismiss and motions for summary judgment, and also filed a motion to strike (Docket No. 58) certain paragraphs submitted in support of PHS' motion for summary judgment.

A hearing on the jury demands and EMC's motion to determine non-core matters and to refer to district court was held at Missoula on November 13, 2008, and hearings on the other pending motions were held at Missoula on December 11, 2008.  The parties were represented at the hearings by counsel[1], and have had the opportunity to submit briefs, responses and replies in support of their positions, as well as oral argument, which have been reviewed by the Court together with the record and applicable law.  These matters are ready for decision.

The pending matters involve both core proceedings and non-core proceedings.  Pursuant to 28 U.S.C. § 157(c)(1) this Court submits the following proposed findings of fact and conclusions of law to the district court with respect to the non-core proceedings, while the core proceedings shall be subject to this Court's findings and conclusions.  In the interests of judicial economy, this adversary proceeding will be referred in its entirety to the United States District Court, Missoula Division, for trial by jury in accordance with EMC's and PHS' jury demands,

---

[1]Crum was represented by Quentin M. Rhoades ("Rhoades") of Missoula, Montana. EMC was represented by Michael G. Black of Missoula.  PHS was represented by Michael F. McMahon of Helena, Montana.  Tomlinson was represented by Martin S. King of Missoula.

which the Plaintiff does not oppose[2], and which encompass all or in part every one of the five claims for relief asserted in the complaint. The Court denies Plaintiff's request to retain pretrial jurisdiction in the interests of judicial economy, and to avoid inconsistent results from separate trials.

[**NOTE to Clerk of Court and to the Parties and their attorneys prior to transmission of proposed findings and conclusions to District Court:**

Under FED. R. BANKR. P. 9033 and after the bankruptcy court files these proposed findings and conclusions, the clerk of court shall serve copies of these proposed findings and conclusions on all parties by mail and note the date of mailing on the docket. Within 10 days after being served with a copy of the proposed findings and conclusions, a party may serve and file with the clerk of bankruptcy court written objections which identify the specific proposed findings or conclusions objected to and state the grounds for such objection. A party may respond to another party's objection within 10 days after being served with a copy thereof. An objecting party shall arrange promptly for the transcription of the record, or such portions of it as all parties may agree upon or the bankruptcy judge deems sufficient, unless the district judge otherwise directs. The time for filing objections may be extended by the bankruptcy judge for a period not exceeding 20 days from the expiration of the time otherwise prescribed. Any request for extension should be filed prior to the expiration of the objection period. After the objection period has expired pursuant to Rule 9033, the clerk of the bankruptcy court shall transmit this decision and the proposed findings of fact and conclusions of law to district court. Any decision within the jurisdiction of

---

[2]PHS is named defendant in Counts One, Two and Three of Plaintiff's complaint, with Tomlinson. EMC is named in the remaining Counts Four and Five.

this Court and decided herein shall be subject to the time period imposed for appeal.

The district judge shall make a de novo review upon the record or, after additional evidence, of any portion of the bankruptcy judge's findings of fact or conclusions of law to which specific written objection has been made. The district judge may accept, reject, or modify the proposed findings of fact or conclusions of law, receive further evidence, or recommit the matter to the bankruptcy judge with instructions.]

## PROCEDURAL HISTORY

Gary Hettick ("Hettick" or "Debtor") filed a voluntary Chapter 7 petition on January 15, 2004.  Schedule B, of Debtor's Schedules, item no. 9 calling for "Interests in insurance policies" is marked "None".  Item no. 20 on Schedule B calling for "Other contingent and unliquidated claims of every nature" lists a potential legal malpractice claim, but does not list a claim against EMC.  Item no. 33 calling for "Other personal property of any kind" is marked "None."

On Schedule F, of Debtor's Schedules, Hettick listed Tomlinson as an unsecured creditor with a disputed claim in an unknown amount.  The Statement of Financial Affairs lists a lawsuit by Tomlinson against Hettick, No. DV-03-082(C), in the Flathead County Montana District Court (hereinafter Tomlinson's "state court action".  Notice of the commencement of the case and deadlines was sent to Tomlinson in care of her attorney David F. Stufft, but Tomlinson did not file a Proof of Claim.

Donald W. Torgenrud ("Torgenrud") was appointed Chapter 7 Trustee initially, and he filed an asset report on March 31, 2004.  Torgenrud passed away in 2008, and Crum was appointed to replace him as Trustee on July 30, 2008.

4

A discharge of the Debtor was entered on May 11, 2004.  On the same date, but after entry of the discharge, Tomlinson filed a complaint to determine dischargeability of her claim. The Debtor moved to dismiss Tomlinson's complaint in Adv. Proc. No. 04-00057 based upon her failure to file by the deadline set by the notice of commencement of the case.  Tomlinson objected, but the Court overruled the objection and dismissed Tomlinson's complaint on July 15, 2004.

Tomlinson filed a motion to modify the stay on December 21, 2005, to pursue her claim in the state court case against Hettick and his insurer EMC based on a commercial general liability ("CGL") insurance policy issued to Hettick, based upon Hettick's alleged negligence in constructing a home for Tomlinson.  Tomlinson's motion specified that she did not seek any recovery against Hettick personally.  The Trustee Torgenrud filed a consent.  After no objection was filed within the notice period the Court granted Tomlinson's motion and modified the stay by Order entered on January 4, 2006, authorizing Tomlinson to pursue her claims for recovery against EMC based on the CGL policy, but not to seek recovery against Hettick individually.  No appeal or motion to reconsider that Order was filed until six months later.

Hettick filed a motion to rescind the order modifying the stay and to declare a default judgment obtained by Tomlinson in the state court action void.  Tomlinson filed an objection, and the contested matter was set for hearing on August 3, 2006.  In her objection Tomlinson advised that a default judgment was entered in the state court case in the amount of $622,478.19, but that it was not to be enforced against Hettick personally, in accordance with the Order modifying the stay.  After a hearing the Court entered a memorandum of decision[3] and order

---

[3]Docket No. 48 entered in Case No. 04-60081-7.

sustaining Tomlinson's objection and denying Hettick's motion to rescind the order modifying the stay and declare the default judgment void. The Court did not agree with Hettick's contentions that the default judgment violated the Court's order and the discharge injunction, but clarified that the default judgment is not a personal liability of Hettick, that Tomlinson's claim is discharged and Hettick has no personal liability for any portion of the default judgment except for purposes of Tomlinson pursuing her claims for recovery under the CGL policy issued by EMC.

Torgenrud filed a final report and account on October 12, 2006, and a Final Decree was entered closing the case on November 15, 2006. More than a year later on December 24, 2007, Torgenrud moved to reopen the case to administer "a potential asset that was not administered before this case was closed", i.e., "the estate's interest in proceeds payable to the Debtor arising from the Debtor's claim against his insurance company." The Court granted the motion and reopened the case.

Torgenrud applied to employ Rhoades as attorney for the estate. Tomlinson objected and moved to rescind Rhoades' employment. After a hearing the Court entered a memorandum of decision and Order overruling Tomlinson's objection. That memorandum[4] noted at page 3:

> Between the date of the Default Judgment and the Amended Default Judgment and unbeknownst to the Court or Torgenrud, Debtor purportedly assigned his claims against EMC to Tomlinson on or about September 11, 2006. Exhibit A. This case was not closed until November 15, 2006, and thus the undisclosed assignment clearly occurred while this case was open. The fact that the assignment was not disclosed to or approved by this Court may very well void the assignment and as a consequence, may leave EMC on the hook for any monies that may be owed to the bankruptcy estate stemming from Debtor's claims against EMC for its failure to defend Debtor in Tomlinson's state court action.

---

[4]Docket No. 72 entered on March 14, 2008, in Case No. 04-60081-7.

6

Tomlinson later prosecuted Debtor's breach of contract claim against EMC, and on July 13, 2007, was awarded summary judgment in the amount of $622,478.00, plus interest, costs and attorney fees. In November of 2007, Rhoades advised Torgenrud of Tomlinson's summary judgment award against EMC and Rhoades eventually convinced Torgenrud that Tomlinson's summary judgment award was an unscheduled asset of the bankruptcy estate.

On July 1, 2008, a Stipulation for Protective Order between Tomlinson, the Trustee, Petit, Hock & Strauch, PLLP, and EMC was filed providing that any information or documents regarding any settlement agreement between Tomlinson and EMC shall be considered confidential. Paragraph 3 of the Stipulation provides:

> In the event the Chapter 7 Trustee commences an adversary proceeding after conclusion of the mediation referenced in paragraph 1, all parties hereto agree and stipulate that this protective order shall continue in effect with respect to the adversary proceeding. Any information or documents, or the content thereof, regarding any settlement referenced in the preceding paragraphs shall not be disclosed, disseminated, discussed, or otherwise shared in any manner with any individuals, business entities, government agencies, or the like, except as provided herein.

Paragraph 7 provided that any confidential material which is filed shall be sealed before filing and not opened until further order of the Court, and paragraph 8 provides: "Use of confidential material at any trial or hearing shall be addressed by subsequent order of this Court." On July 1, 2008, the Court entered a "Stipulated Protective Order", Docket No. 80, approving and incorporating the provisions of the Stipulation. This Court has the discretion to use confidential material in the Stipulation to the extent necessary for these proposed findings and conclusions.

Crum was designated as successor trustee to Torgenrud on July 30, 2008, and applied for and was employed attorney for the estate to pursue this adversary proceeding, by Order entered on August 29, 2008.

**Adversary No. 08-00063.**

Crum initiated this adversary proceeding by filing a complaint on August 29, 2008. The complaint sets forth five (5) claims for relief entitled Count One ("Turnover and Accounting of Estate Property") against Tomlinson and PHS, which represented her in the state court litigation, Count Two ("Avoidance of and/or Liability for Unauthorized Transfer") against Tomlinson and PHS, Count Three ("Conversion") against Tomlinson and PHS, Count Four ("Breach of Duty to Defend") against EMC, and Count Five ("Statutory Cause of Action Pursuant to MONT. CODE ANN. § 33-18-242 for violation of MONT. CODE ANN. § 33-18-201") against EMC.

On October 2, 2008, EMC filed its motion to dismiss for failure to state a claim, motion to determine claims against it are non-core and for referral to the district court, demand for jury trial and a motion for summary judgment, with a supporting memorandum and statement of uncontroverted facts and supporting declarations. PHS filed a demand for jury trial on October 9, 2008. Tomlinson filed her motion for summary judgment on December 2, 2008. Crum filed responses in opposition to the motions to dismiss and for summary judgment. Crum filed a response in opposition to the motion for referral during pre-trial matters, but admitting that her claims against EMC are non-core.

## DISCUSSION

### I. EMC's and PHS' Demands for Jury Trial (Docket Nos. 10 and 23).

EMC and PHS demand a trial by jury pursuant to FED. R. BANKR. P. 9015(a), incorporating FED. R. CIV. P. 38(b), as to factual issues on all allegations asserted against EMC, and each does not consent to trial by jury in the bankruptcy court pursuant to 28 U.S.C. § 157(e). At the hearing on November 13, 2008, Plaintiff's counsel Rhoades stated on the record that

8

Crum does not oppose the requests for jury trial, but requested that this Court handle pretrial matters, which in the Ninth Circuit a bankruptcy court may do, according to *Sigma Micro Corporation v. Healthcentral.com (In re Healthcentral.com)*, 504 F.3d 775 (9th Cir. 2007).

In *Healthcentral.com* the Court summarized the Seventh Amendment of the United States Constitution's right to jury trial held in *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 64, 109 S.Ct. 2782, 106 L.Ed.2d 26 (1989) for creditors who had filed no claim of their own.  504 F.3d at 786.  Every one of the complaints five claims for relief names either PHS or EMC, and both are entitled to trial by jury as recognized and admitted by the Plaintiff.

**II.  EMC's Motion to Determine that Claims against EMC are Non-Core Proceedings and to Refer Them to the District Court.**

EMC moves to determine Counts Four and Five are non-core proceedings and to refer them to the district court for trial.  Crum admitted that her claims against EMC are non-core but requested that this Court retain jurisdiction for pretrial matters.  EMC replied, recognized this Court's discretion to preside or pretrial matters, but asked the Court to decline to do so with respect to EMC because it should not have to incur the cost of monitoring discovery and disputes unrelated to Counts Four and Five.  The Court agrees.

In *Healthcentral.com*, the Ninth Circuit adopted the majority rule that the valid right to a jury trial does not mean that the bankruptcy court must instantly give up jurisdiction and transfer the action immediately, but rather held that the bankruptcy court "may retain jurisdiction over the action for pretrial matters" until the matter is ready for trial.  504 F.3d at 788.  These proposed findings and conclusions dispose of all the pending matters in this adversary proceeding, including setting forth the applicable law in this district for the core proceedings, regarding the

9

nature of property of the estate, summary judgment, and the notice requirements for sale, abandonment or other disposition of property of the estate.

With respect to Counts Four and Five, they must be referred to the district court for trial by jury, and the Court sees no reason to retain jurisdiction over any further pretrial matters under *Healthcentral.com.* With respect to Counts One, Two and Three against PHS, they must be referred to the district court for trial by jury even though they are or may be core proceedings.

Under *Healthcentral.com* the Court "may" but is not required to retain jurisdiction for pretrial matters. 504 F.3d at 788. With these proposed findings of fact and conclusions of law disposing of all pending pretrial matters, this Court deems the appropriate exercise of its discretion is to refer all five Counts of the complaint to the district court at this time. To do otherwise would require duplicate trials on Counts One, Two and Three – one against Tomlinson in this Court and one against PHS in the district court. That would not only burden the Trustee with the expense of preparing for a wholly separate trial but would also waste scarce judicial resources, and runs the risk of conflicting results from separate trials. Therefore, in its discretion, this Court will refer this adversary proceeding in its entirety to the district court for trial.

### III.  EMC's Motion to Dismiss Counts Four and Five (Docket No. 11).

EMC moved to dismiss Counts Four and Five of the complaint, and therefore dismiss EMC from this adversary proceeding, based on Rule 12(b)(6) for failure to state a claim upon which relief can be granted. EMC argues that the factual allegations of the complaint on the statutory and contract claims, and regarding actual and special damages, are inadequate to rise above the level of speculation, even assuming all the allegations in the complaint are true, citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 1965, 167 L.Ed.2d 929 (2007),

and *Cut Bank School Dist. No. 15 v. Rummel,* 2002 MT 248, ¶ 8, 312 Mont. 143, 145, 358 P.3d
159, 161.  EMC argues that the Trustee should be required to plead how any harm or damages
were suffered based on EMC's breach of a contractual duty to defend when the Court lifted the
stay and allowed Tomlinson to proceed against the Debtor.  With respect to Count Five, EMC
argues that the Trustee failed to allege facts that would implicate MONTANA CODE ANNOTATED
("MCA") § 33-18-201 to allow recovery under MCA § 33-18-242.

The Montana Supreme Court described damages for the breach of an obligation arising
from contract as,

> the amount which will put the nonbreaching party in as good a position as if the
> contract had been performed.  *Sack v. A.V. Design, Inc.* (1984), 211 Mont. 147,
> 152, 683 P.2d 1311, 1314.  "A plaintiff will not be denied recovery simply
> because is it difficult to ascertain the amount of his damages, as long as the
> amount can be proven with a reasonable degree of certainty."  *Sack*, 211 Mont. at
> 153, 683 P.2d at 1315.

*Rummel*, ¶ 11.  The court in *Rummel* affirmed a district court's conclusion, after a bench trial,
that the plaintiff failed to prove the damages element of a breach of contract claim.  *Rummel,*
2002 MT 248, ¶ 11, 312 Mont. at 145-46, ¶ 11, 358 P.3d at 161-62, ¶ 11.  As such, *Rummel* is no
support to an argument against damages in the context of a Rule 12(b)(6) motion to dismiss
Count Four, and on the contrary lends support to allowing Crum the chance to prove the estate's
damages for breach of contract at a trial, as in *Rummel*.

EMC contends that the Plaintiff should be required to plead how any harm or damages
were suffered based on EMC's breach of a contractual duty to defend when the Court lifted the
stay and allowed Tomlinson to proceed against the Debtor, and EMC satisfied the judgment and
paid all fees and costs incurred in defending the state court case.

11

For purposes of the discussion regarding this and other pending motions below, the Court notes here that the relief granted lifting the automatic stay to allow Tomlinson to proceed against the Debtor was limited, and in no respect should be construed to excuse or justify EMC's breach, if any, of its duty to defend Hettick in state court under the CGL policy.  Tomlinson moved to modify the stay to permit her to prosecute her pending claims in the state court civil action "to pursue the claim under the CGL policy, not to seek any recovery against the debtor individually."[5]  After the Trustee consented the Court granted Tomlinson's motion, but only to pursue her claims for recovery under the CGL insurance policy and not to seek recovery against Hettick individually.  The relief granted was limited, and the stay was terminated seven months earlier, but nothing in Tomlinson's motion asked to excuse EMC from its contractual duty, if any, to defend Hettick estate against Tomlinson's lawsuit, and the relief granted to Tomlinson did not excuse or justify EMC's refusal to defend or relieve it of its duty.

Paragraph 15 of the complaint alleges that EMC breached its duty under the CGL policy to defend Hettick and follow good faith settlement practices[6].  Count Four alleges breach by EMC of its duty to defend.  The United States Supreme Court in *Swierkiewicz v. Sorema, N.A.*, 534 U.S. 506, 512, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002) noted that Rule 8(a)(2) provides that a complaint must include only "a short and plain statement of the claim showing that the pleader is entitled to relief" and that "[s]uch a statement must simply "give the defendant fair notice of

---

[5]Docket No. 20 in Case No. 04-60081-7, page 2, paragraph 2(e).  The stay had been terminated under 11 U.S.C. § 362(c)(2)(C) by entry of the Debtor's discharge on May 11, 2004.

[6]Section 33-18-201(6) prohibits as unfair claim settlement practice "neglect to attempt in good faith to effectuate prompt, fair, and equitable settlements of claims in which liability has become reasonably clear", and damages and exemplary damages may be awarded in an action under § 33-18-242(4) caused by violation of § 33-18-201(6).

what the plaintiff's claim is and the grounds upon which it rests." (Citing *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

No suggestion or showing exists that Counts Four and Five of Crum's complaint are excepted from Rule 8(a)(2)'s simplified pleading standard.  The U.S. Supreme Court explained:

> Given the Federal Rules' simplified standard for pleading, "[a] court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved inconsistent with the allegations."  *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984).  If a pleading fails to specify the allegations in a manner that provides sufficient notice, a defendant can move for a more definite statement under Rule 12(e) before responding.  Moreover, claims lacking merit may be dealt with through summary judgment under Rule 56.  The liberal notice pleading of Rule 8(a) is the starting point of a simplified pleading system, which was adopted to focus litigation on the merits of a claim.  *See Conley, supra*, at 48 ("The Federal Rules reject the approach that pleading is a game of skill in which one misstep by counsel may be decisive to the outcome and accept the principle that the purpose of pleading is to facilitate a proper decision on the merits").

*Swierkiewicz*, 534 U.S. at 514.

The Supreme Court cited *Swierkiewicz* in its decision in *Twombly*, 550 U.S. at 544, 127 S.Ct. at 1965, 1969 (2008), but nonetheless affirmed dismissal of an antitrust conspiracy complaint claiming violations of the Sherman Act, 15 U.S.C. § 1, based on a Rule 12(b)(6) motion to dismiss, because the complaint alleged parallel business conduct alone, without factual matter to suggest that an agreement was made.  *Twombly*,  550 U.S. at __, 127 S.Ct. at 1964-66. The Ninth Circuit noted in *Rick-Mik Enterprises, Inc. v. Equilon Enterprises, LLC*, 532 F.3d 963, 970-71 (9th Cir. 2008), that the Supreme Court "retired" the "no set of facts" language from *Conley* "at least in antitrust matters."  *See also Kendall v. Visa U.S.C., Inc.*, 518 F.3d 1042, 1047 n.5 (9th Cir. 2008).  Neither Counts Four nor Count Five in the instant case seek relief based on a Sherman Act antitrust claim, and so the specific holding in *Twombly* does not support EMC's

motion to dismiss Counts Four and Five of Crum's complaint.

The rule in the Ninth Circuit formerly was that a complaint should not be dismissed for failure to state a claim "unless it appears beyond a doubt that plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Wright v. Riveland*, 219 F.3d 905, 912 (9th Cir. 2000). Counts Four and Five of Crum's complaint are based on Montana statutes, and the rule in Montana notwithstanding *Twombly* is:

> A complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts which would entitle him to relief. *Reidelbach v. Burlington Northern and Santa Fe Ry. Co.*, 2002 MT 289, ¶ 14, 312 Mont. 498, ¶ 14, 60 P.3d 418, ¶ 14. When considering a motion to dismiss under M.R.Civ.P. 12(b)(6), all well-pleaded allegations and facts in the complaint are admitted and taken as true, and the complaint is construed in a light most favorable to the plaintiff. *Reidelbach,* ¶ 14.

*Sinclair v. Burlington Northern and Santa Fe Ry. Co.*, 2008 MT 424, ¶ 25, 347 Mont. 395, ¶ 25, 200 P.3d 46, ¶ 25; *see also Evanns v. AT&T Corp.*, 229 F.3d 837, 839 (9th Cir. 2001); *Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293, 1295 (9th Cir. 1998); *Johnson v. Knowles*, 113 F.3d 1114, 1117 (9th Cir.1997).

Thus, in considering whether to dismiss Counts Four and Five the Court must treat all of the Plaintiff's factual allegations as admitted and true and construe the complaint in the light most favorable to Crum. *Sinclair*, ¶ 25. Applying this standard, taking all allegations of fact in the complaint as true and construing them in the light most favorable to Crum, the Court finds that EMC has failed to satisfy the heavy showing required for dismissal under Rule 12(b)(6). This Court finds that Counts Four and Five of Plaintiff's complaint give EMC fair notice of what the Plaintiff's claims are and the grounds upon which they rest, which is sufficient to survive a Rule 12(b)(6) motion to dismiss. After restating the common allegations including that EMC

refused to defend Hettick against Tomlinson's state law claim, and that Hettick assigned his breach of contract and bad faith claim against EMC to Tomlinson without authority from this Court, Count Four states a claim for relief based on EMC's breach of its duty to defend Hettick after his request. Count Five states a cause of action based on § 33-18-201 ("Unfair claim settlement practices prohibited") and § 33-18-242 ("Independent cause of action") asking for special and general damages, and punitive damages against EMC for its refusal, with actual malice, to defend Hettick until after default had been entered. Section 33-18-242(4) authorizes an award of damages caused by violation of certain subsections of § 33-18-201[7], including exemplary damages in accordance with § 27-1-221 ("punitive damages"). Rule 9(b) provides that malice and other conditions of a person's mind may be alleged generally, which Count Five does at paragraph 41 of the complaint.

The Court finds that Counts Four and Five provide the factual specificity required "to raise a right to relief above the speculative level." *Twombly*, 127 S.Ct. at 1965; *Rick-Mik Enterprises, Inc. v. Equilon Enterprises, LLC*, 532 F.3d at 973. As such, EMC's Rule 12(b)(6) motion to dismiss should not be granted. A leading commentator notes that "[i]f the complaint is ambiguous or does not contain sufficient information to allow a responsive pleading to be framed, a motion under Rule 12(b)(6) is not appropriate; the proper remedy is a motion for a more definite statement under Rule 12(e)." 5B Wright & Miller, Federal Practice & Procedure: Civil 3d § 1356 (3d ed. 2004); *Swierkiewicz*, 534 U.S. at 514. EMC filed a Rule 12(b)(6) motion rather than follow the proper motion for a more definite statement under Rule 12(e). The Court

---

[7]Section 33-18-242(4) lists subsections (1), (4), (5), (6), (9), or (13) of § 33-18-201 as the basis for damages under the independent cause of action in Chapter 18 – "Unfair Trade Practices".

concludes that EMC failed to satisfy its heavy burden under Rule 12(b)(6) to dismiss Counts

Four and Five for failure to state a claim upon which relief can be granted, and its motion to

dismiss should be denied.

**IV.  EMC's Motion for Summary Judgment (Docket No. 12).**

EMC moves for summary judgment on Counts Four and Five.  The following excerpt

from *Brown v. Crum (In re Brown)*, 363 B.R. 591, 603-04 (Bankr. D. Mont. 2007) sets out the

standard which applies to all three pending motions for summary judgment.

> Summary judgment is governed by FED. R. BANKR. P. 7056.  Rule 7056, incorporating  FED. R. CIV. P. 56(c), states that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  "The proponent of a summary judgment motion bears a heavy burden to show that there are no disputed facts warranting disposition of the case on the law without trial."  *Younie v. Gonya (In re Younie)*, 211 B.R. 367, 373 (9th Cir. BAP 1997) (quoting *Grzybowski v. Aquaslide "N' Dive Corp. (In re Aquaslide "N" Dive Corp.)*, 85 B.R. 545, 547 (9th Cir. BAP 1987)).  The manner in which this burden is proven depends on which party has the burden on a particular claim or defense at the time of trial.

> If the *moving* party will bear the burden of persuasion at trial, that party must support its motion with credible evidence–using any of the materials specified in Rule 56(c)–that would entitle it to a directed verdict if not controverted at trial.  Such an affirmative showing shifts the burden of production to the party opposing the motion and requires that party either to produce evidentiary materials that demonstrate the existence of a "genuine issue" for trial or to submit an affidavit requesting additional time for discovery.  If the burden of persuasion at trial would be on the *non-moving* party, the party moving for summary judgment may satisfy Rule 56's burden of production in either of two ways. First, the moving party may submit affirmative evidence that negates an essential element of the nonmoving party's claim. Second, the moving party may demonstrate to the Court that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's claim.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 330-34, 106 S.Ct. 2548, 2557, 91 L.Ed.2d 265  (1986) (Brennan dissent) (citations omitted).  *See also Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Companies, Inc.*, 210 F.3d 1099, 1102-06 (9th Cir. 2000) (discussing burdens for withstanding summary judgment).

When seeking summary judgment, the moving party must initially identify those portions of the record before the Court which it believes establish an absence of material fact.  *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n.*, 809 F.2d 626, 630 (9th Cir. 1987).  If the moving party adequately carries its burden, the party opposing summary judgment must then "set forth specific facts showing that there is a genuine issue for trial." *Kaiser Cement Corp. v. Fischback & Moore, Inc.*, 793 F.2d 1100, 1103-04 (9th Cir. 1986), *cert. denied*, 469 U.S. 949 (1986); FED. R. CIV. P. 56(e).  *See also Frederick S. Wyle Prof'l. Corp. v. Texaco, Inc.*, 764 F.2d 604, 608 (9th Cir. 1985) ("the opponent must affirmatively show that a material issue of fact remains in dispute").  That is, the opponent cannot assert the "mere existence of some alleged factual dispute between the parties." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).  Moreover, "[a] party opposing summary judgment may not simply question the credibility of the movant to foreclose summary judgment."  *Far Out Prods., Inc. v. Oskar*, 247 F.3d 986, 997 (9th Cir. 2001).

To demonstrate that a genuine factual issue exists, the objector must produce affidavits which are based on personal knowledge and the facts set forth therein must be admissible in evidence.  *Aquaslide*, 85 B.R. at 547.  All reasonable doubt as to the existence of genuine issues of material fact must be resolved against the moving party.  *Liberty Lobby,* 477 U.S. at 247-48, 106 S.Ct. at 2509.  However, "[d]isputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment." *T.W. Elec. Serv.*, 809 F.2d at 630 (citing *Liberty Lobby*, 477 U.S. at 248, 106 S.Ct. at 2510).  "A 'material' fact is one that is relevant to an element of a claim or defense and whose existence might affect the outcome of the suit.  The materiality of a fact is thus determined by the substantive law governing the claim or defense." *Id.*

If a rational trier of fact might resolve disputes raised during summary judgment proceedings in favor of the nonmoving party, summary judgment must be denied.  *T.W. Elec. Serv.*, 809 F.2d at 630; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 202 (1986).  Thus, the Court's ultimate inquiry is to determine whether the "specific facts" set forth by the nonmoving party, viewed along with the undisputed background or contextual facts, are such that a rational or reasonable jury might return a verdict in its favor based on that evidence. *T.W. Elec. Serv.*, 809 F.2d at

17

631.  In the absence of any disputed material facts, the inquiry shifts to whether the moving party is entitled to judgment as a matter of law.  *Celotex*, 477 U.S. at 323, 106 S.Ct. at 2552-53.

In addition the Ninth Circuit wrote in reviewing whether to affirm summary judgment that its task is identical to the bankruptcy court:  "We must view the evidence and inferences therefrom in the light most favorable to the party opposing the motion for summary judgment."  *Healthcentral.com*, 504 F.3d at 788, quoting *Jewel Cos. v. Pay Less Drug Stores Northwest, Inc.*, 741 F.2d 1555, 1559 (9th Cir. 1984).  Based on the above, the Court's enquiry may end if it determines that the moving party has failed to satisfy its burden to show absence of a genuine issue of material fact, without deciding each and every contention raised by the parties in their briefs, responses and replies.

EMC's motion was accompanied by a statement (Docket No. 14) which sets forth what it contends are the following uncontroverted facts:

1.  EMC issued a Commercial General Liability Policy (No. 1D8-81-23-02) ("CGL Policy") insuring Gary J. Hettick d/b/a H Construction ("Hettick") for the policy period of July 20, 2001 to July 20, 2002 (Exhibit D of Declaration of Kristin Ziegler).

2.  Under the terms of the CGL Policy, the limits of insurance were $500,000 per occurrence and $1,000,000.00 in aggregate limits (Ex. D to Declaration of Kristin Ziegler).

3.  In November 2005, EMC first received notice, by letter received from Kaye Tomlinson's attorney, that an action had been commenced by Tomlinson against Hettick (Declaration of Kristin Ziegler, ¶ 3-4, and Exhibit A thereto; Verified Answer of Petit, Hock & Strauch, PLLP to Ms. Crum's Adversary Complaint and Request for Declaratory Relief at 6, ¶ XIII(1) and (3)).

4.  EMC subsequently obtained a copy of the Complaint filed by Tomlinson in February 2003 in *Tomlinson v. Hettick, et al.*, Flathead County Cause No. DV-03-082(C) ("Flathead County Case"), and the Answer filed by Hettick in March 2003 in the Tomlinson case (Declaration of Kristin Ziegler, ¶ 5,

18

and Exhibit B thereto).

5.  EMC learned Hettick had filed for bankruptcy, unsuccessfully attempted to discuss the claims with the Chapter 7 Trustee, and denied coverage for Tomlinson's claims asserted in the Complaint filed in the Flathead County Case on December 8, 2005 (Declaration of Kristin Ziegler, ¶ 6).

6.  On May 26, 2006, EMC first received written notice that (a) Tomlinson had filed a First Amended Complaint against Hettick in the Flathead County Case, (b) default had been entered against Hettick on April 26, 2006, and (c) an Order Setting Hearing on the amount of damages had been entered on May 11, 2006 (Declaration of Kristin Ziegler, ¶ 7-8, and Exhibit C thereto).

7.  Prior to late May 2006, EMC was not notified that this Court had entered an Order Granting Motion to Modify Stay on January 4, 2006 (*In re Hettick*, Cause No. 04-60081, Docket No. 22), which authorized Tomlinson to proceed against Hettick in Flathead County (Declaration of Kristin Ziegler, ¶ 8).

8.  EMC retained the law firm of Garlington, Lohn & Robinson, PLLP, to defend Hettick after EMC learned of the entry of default (Declaration of Kristin Ziegler, ¶ 7; Declaration of David C. Berkoff, ¶ 3).

9.  A hearing on damages occurred on June 19, 2006, and Findings of Fact, Conclusions of Law and Default Judgment (dated July 5, 2006) were entered on July 14, 2006 (Declaration of Michael G. Black, and Exhibit B thereto).

10.  On November 27, 2006, Amended Findings of Fact, Conclusions of Law and Default Judgment (dated November 22, 2006) were entered *nunc pro tunc* to July 14, 2006 in the Flathead County Case (Declaration of Michael G. Black, and Exhibit C thereto).

11.  This Court entered two orders (*In re Hettick*, Cause No. 04-60081, Docket Nos. 22 and 47 modifying stay and authorizing Kaye Tomlinson to obtain judgment in the Flathead County Case, but limiting recovery to the CGL policy issued to Hettick by EMC, (Declaration of Michael G. Black, and Exhibit E thereto).  EMC requests the Court to take judicial notice of these filings pursuant [to] F.R.Evid. 201.

12.  On October 12, 2007, Kaye Tomlinson filed an Acknowledgment and Satisfaction of Judgment in the Flathead County Case (Declaration of Michael G. Black, and Exhibit A thereto).

13.  The Kay Tomlinson Judgment was satisfied by payment by EMC to

Tomlinson (Verified Answer of Petit, Hock & Strauch, P.L.L.P. to Ms. Crum's Adversary Complaint and Request for Declaratory Relief, at 10, ¶ XVI (9)-(10); at 11, ¶ XXVI, which is filed as Docket No. 7 herein).

14.  During the course of representing Hettick, Garlington, Lohn & Robinson, PLLP, billed EMC for all costs and fees incurred in the representation of Hettick and EMC paid all such billings (Declaration of David C. Berkoff, ¶ 6-7).

15.  During the course of representing Hettick, Garlington, Lohn & Robinson, PLLP, did not bill Hettick for any fees or costs incurred in such representation, and Hettick paid no such fees or costs (Declaration of David C. Berkoff, ¶ 6-7).

16.  During the course of representing Hettick, Garlington, Lohn & Robinson, PLLP, did not bill the Chapter 7 Trustee for any fees or costs incurred in such representation, and the Chapter 7 Trustee paid no such fees or costs (Declaration of David C. Berkoff, ¶ 6-7).

17.  The judgment against Hettick in the Flathead County Case has been satisfied.  EMC has paid all attorneys fees and costs incurred in the defense of Hettick, and there is no evidence of any detriment, harm, or damages suffered by Hettick, or the Chapter 7 Trustee, or the Estate of Hettick (Declaration of David C. Berkoff, ¶ 6-7); (Declaration of Michael G. Black, Exhibit A).

EMC's statement is accompanied by the declarations and supporting exhibits, Doc. Nos. 15, 16 and 17.  In reply, Crum filed a statement asserting the following genuine issues of fact (Docket No. 26):

1.  Whether EMC satisfied the "Kay Tomlinson Judgment;" and

2.  Whether there exists "evidence of any detriment, harm, or damages suffered by Hettick, or the Chapter 7 Trustee, or the Estate of Hettick."

**Contentions of the parties.**

EMC argues that it satisfied its initial burden for summary judgment dismissing Counts Four and Five by demonstrating that it satisfied the state court judgment against Hettick and paid all costs of defense, and that neither Hettick nor the Plaintiff suffered damages or were the source

20

of assets to satisfy the judgment, and so the Trustee is required under *Rummel* to present proof of damages.  The Court notes, as above, that *Rummel* was decided after a bench trial where the plaintiff was give the opportunity to offer evidence of damages, which was found insufficient. *Rummel,* ¶¶ 8, 11.

The Plaintiff objects to EMC's motion for summary judgment.  Crum argues that the Debtor, without authority, notice or a hearing, assigned the estate's unliquidated claims against EMC based on the contractual duty to defend and first-party bad faith to Tomlinson, that EMC reached a settlement with Tomlinson of those claims, which is sealed, and those assets were not turned over to the estate but rather kept by Tomlinson who was no more entitled than any other unsecured creditor to more than a pro rata share of the estate's assets, including the claims against EMC.  Crum notes this Court's memorandum which stated that the undisclosed and unapproved assignment of the claims to Tomlinson may void the assignment, to which Crum agrees and calls the assignment "utterly void" because it was not approved after notice and a hearing as required by FED. R. BANKR. P. 9019.

Crum agrees that the material facts related to Count Four are not disputed but argues that EMC is not entitled to judgment as a matter of law because it breached its duty to defend, citing *Nielsen v. TIG Ins. Co.*, 442 F.Supp. 972, 980 (D. Mont. 2006).  Crum argues that the $622,478.00 judgment against EMC based on its breach of the contractual duty to defend is an asset of the estate which was never listed in Debtor's Schedules or Statement of Financial Affairs, and EMC is not entitled to summary judgment as a matter of law but rather the estate is

entitled to judgment against EMC for the judgment, plus interest, costs and attorney fees[8].  Crum

cites *Field v. Transcontinental Insurance Co.*, 219 B.R. 119 & n.7 (E.D. Va. 1998), *aff'd*, 173

F.3d 424 (4th Cir. 1999), *In re Richards*, 249 B.R. 859, 861 (Bankr. E.D. Mich. 2000), *In re*

*Tomaiolo*, 205 B.r. 10, 14-15 (Bankr. D. Mass. 1997), *In re Alvarez*, 224 F.3d 1273, 1278-79

(11th Cir. 2000) and this Court's decision in *Brown*, that a claim is property of the estate

regardless of when it accrues, so long as it is adequately linked to the prebankruptcy past.  Crum

argues that the CGL policy was purchased prepetition, the casualty was suffered prepetition and

Tomlinson filed her lawsuit against Hettick prepetition and so all claims arising from that policy,

including Hettick's first-party bad faith claim, belong to the estate regardless of when they

accrue.  *Field*, 219 B.R. at 119.

Further, Crum argues that choses-in-action against insurance companies for bad faith

must be disclosed whether they accrue before or after the petition date.  *Hamilton v. State Farm*

*First & Cas. Co.*, 270 F.3d 778, 785 (9th Cir. 2001) ("The debtor's duty to disclose potential

claims as assets does not end when the debtor files schedules, but instead continues for the

duration of the bankruptcy proceeding.").

Crum defines the estate's damages and detriment as the loss of its opportunity to pursue

its breach of contract and first-party bad faith claims against EMC when EMC settled with

Tomlinson for the additional consideration of a release of the estate's first-party claims, while

knowing of Hettick's bankruptcy case and without notice to the Trustee.  Crum argues that the

detriment entitles the estate to damages from EMC under MCA § 27-1-202 which provides:

---

[8]The Trustee has not filed a motion for summary judgment pursuant to Mont. LBR 7056-1.  As such her request for affirmative relief in the form of summary judgment in her objection is summarily denied.

"Every person who suffers detriment from the unlawful act or omission of another may recover from the person in fault a compensation therefor in money, which is called damages."

With respect to Count Five and damages Crum cites *Gillette v. Delmore*, 886 F.2d 1194, 1199 (9th Cir. 1989) that when other elements of a claim for relief are shown, whether damages are speculative is a question of fact to be determined at trial, and summary judgment is not appropriate.  This Court agrees.

Crum argues that EMC and the other defendants refuse to answer the apportionment of the settlement between Tomlinson's claims and the estate's claims for breach of contract and first-party bad faith, and Crum argues that the portion of the consideration paid by EMC to release the estate's claims for first-party bad faith under Count Five are the damages to the estate, and a question for the finder of fact to resolve under *Gillette*.

In reply, EMC argues that the Plaintiff has offered no proof that it paid any damages to Tomlinson or that Hettick was exposed to liability because of his discharge, so the Plaintiff has no claim against EMC for failure to indemnify under MCA § 28-11-314(2) ("Upon an indemnity against clams, demands, damages, or costs, expressly or in other equivalent terms, the person indemnified is not entitled to recover without payment thereof.")  Because it satisfied the judgment and all fees and costs, EMC argues that no genuine issue of material fact exists as to whether the estate suffered damages under Count Four, or under Count Five because the Trustee offered no evidence of damages and EMC is entitled to summary judgment.

EMC argues that the settlement between EMC and Tomlinson is not void, but allows that "its scope may be questioned in some respects."  EMC also argues that certain of the Plaintiff's factual assertions are unsupported by competent evidence and should not be considered.  The

23

first such contention is that EMC was adjudged liable to pay the Debtor $622,478.00 for failure

of the duty to defend, which EMC argues is controverted by the partial summary judgment order

entered by the state district court which provided that EMC was liable to Tomlinson.  The second

contention is that Hettick or the Trustee requested a defense by EMC prior to entry of default.

EMC contends that it did not receive notice of stay relief or that an amended complaint had been

filed until after default had been entered, after which EMC provided a defense.  The third

contested contention is that EMC paid Tomlinson to release the estate's claim against

Tomlinson, which EMC contends is unsupported by the evidence and may violate the Court's

Order on confidential materials.  EMC disputes that the Trustee has offered competent evidence

that Tomlinson compromised the estate's claims.

EMC argues that the state court's partial summary judgment order has no collateral

estoppel (issue preclusion) effect establishing the estate's damages against EMC because the

Trustee's claims are not identical to the claims asserted by Tomlinson, and no final judgment on

the merits in the declaratory action was entered because of the compromise settlement between

Tomlinson and EMC.

### *Brown* case and Property of the Estate – § 541(a).

In determining whether EMC satisfied its heavy burden to show that there is no genuine

issue of material fact warranting disposition of the case on the law without trial, it is necessary to

explain whether the breach of contract claim and first-party bad faith claim were property of the

estate, the loss of which might give rise to damages.  This Court in *Brown* set forth the current

test used in this district for determining property of the estate:

Section 541 defines property of the bankruptcy estate to

24

include "all legal or equitable interests of the debtor in property as of the commencement of the case." § 541(a)(1).

*In re Folks*, 211 B.R. 378, 384  (9th Cir. BAP 1997).

Therefore, assets of the estate properly include any of the debtors' causes of actions.  *Cusano v. Klein*, 264 F.3d 936, 945 (9th Cir. 2001);  *see also United States v. Whiting Pools, Inc.,* 462 U.S. 198, 205 n. 9, 103 S.Ct. 2309, 2313 n. 9, 76 L.Ed.2d 515 n. 9 (1983) (Citing to comments made in the House and Senate Reports on the Bankruptcy Code, "[t]he scope of this paragraph [§ 541(a)(1) ] is broad. It includes all kinds of property, including tangible or intangible property, causes of action (see Bankruptcy Act § 70a(6)), and all other forms of property currently specified in section 70a of the Bankruptcy Act.  H.R.Rep. No. 95-595, p. 367 (1977); S.Rep. No. 95-989, p. 82 (1978), U.S.Code Cong. & Admin.News 1978, pp. 5868, 6323."); *In re Moore*, 110 B.R. 924, 925- 926 (Bankr. C.D.Cal 1990)(lender liability action by debtor against bank is estate property); *Gandy v. Peoples Bank and Trust Co*., 224 B.R. 340, 345 (S.D.Miss. 1998)(debtor's lawsuit, instituted after discharge, based on allegedly unlawful insurance premiums and interest in connection with a pre-bankruptcy loan, was estate property).

If the cause of action accrued prior to a debtor's petition date, it is an asset that must be scheduled.  *Cusano*, 264 F.3d at 947.  Unscheduled claims pass to the trustee and are not abandoned, *Welsh v. Quabbin Timber, Inc.*, 199 B.R. 224, 229 (D.Mass. 1996), even though the estate is closed or the plan is confirmed.  *Dixon v. First Family Financial Services*, 276 B.R. 173, 181 (S.D.Miss. 2002), *abrogated on other grounds, Reed v. Mississippi Farm Bureau Mut. Ins. Co*., 299 B.R. 804 (S.D.Miss. 2003)("It is axiomatic that, without disclosure of property, it can be neither abandoned nor administered."); *see also, Tilley v. Anixter Inc*., 332 B.R. 501, 508 (D.Conn. 2005)(closure of an estate does not result in abandonment of unscheduled claim); *An-Tze Cheng v KMS Diversified Investments, Inc.*, 308 B.R. 448, 459-60 (9th Cir. B.A.P. 2004) (trustee may reopen case to administer omitted asset); 11 U.S.C. § 554.  Abandonment cannot occur without notice to creditors and a hearing.  *Sierra Switchboard Co. v. Westinghouse Elec. Corp*., 789 F.2d 705, 709 (9th Cir. 1986).

Moreover, the accrued cause of action is property of the estate even if the debtors were unaware of the claim when they filed for bankruptcy protection.  *See Miller v. Pacific Shore Funding*, 287 B.R. 47, 50 (D.Md. 2002) ("Even a cause of action that the debtor, when filing the petition, did not know the law granted belongs to the estate. ...  Property of the debtor does not escape the bankruptcy estate merely because the debtor is unaware of its existence.")  A later recovery on the claim is derivative of the cause of action and therefore also property of the

25

estate.  *In re Smith*, 293 B.R. 786, 788 (Bankr. D.Kan. 2003); *In re Ballard,* 238 B.R. 610, 624 (Bankr. M.D.La. 1999).

*Brown*, 363 B.R. at 604-05.

The Ninth Circuit explained further in *Hamilton*:

The debtor, once he institutes the bankruptcy process, disrupts the flow of commerce and obtains a stay and the benefits derived by listing all his assets.  The Bankruptcy Code and Rules "impose upon the bankruptcy debtor an express, affirmative duty to disclose all assets, *including contingent and unliquidated claims.*" [*In re Coastal Plains*, 179 F.3d 197, 207-208 (5th Cir. 1999)], [*Hay v. First Interstate Bank of Kalispell, N.A.,* 978 F.2d 555, 557 (9th Cir. 1992)]; 11 U.S.C. § 521(1).  The debtor's duty to disclose potential claims as assets does not end when the debtor files schedules, but instead continues for the duration of the bankruptcy proceeding.  *In re Coastal Plains*, 179 F.3d at 208 ....

*Hamilton,* 270 F.3d at 785.  (Emphasis in original).  The breach of contract claim and first-party bad faith claim are not "so personal [to the Debtor] as to exclude [them] from the bankruptcy estate."  *Suter v. Goedert (In re Suter)*; 396 B.R. 535, 546 (D. Nev. 2008).[9]  Therefore, this Court concludes the breach of contract claim and first-party bad faith claim are included in the bankruptcy estate.  *Henson v. Lucas (In re Henson)*, 2006 WL 3861370 at * 5 (Bankr. N.D. Cal. 2006) (if "debtor could raise a claim at the commencement of the bankruptcy case, the claim becomes the exclusive property of the bankruptcy estate.") (emphasis in original).  The claims remain property of the estate even after the bankruptcy case was closed. When a debtor fails to correctly schedule an asset, including a cause of action, the asset remains the property of the

---

[9] The District Court in *In re Suter* envisioned three reasons a cause of action may be so personal as to exclude it from the estate: (1) intimately personal claims serving as a catharsis for the debtor; (2) claims that would be unfair to keep from public scrutiny if they were sold; (3) personal injury claims where compensation is intended to make a plaintiff whole, not merely to pay off a debt. "Each of these reasons stems from righting a wrong done to a plaintiff herself." *Id.* In this case, the breach of contract claim and first-party bad faith claim are not so personal that they are excluded from the bankruptcy estate.

bankruptcy trustee forever (or until administered or formally abandoned by the trustee). 11 U.S.C. § 544(d); *Griffin v. Allstate Ins. Co*., 920 F.Supp. 127, 130 (C.D. Cal. 1996) ("Lawsuits remain part of the bankruptcy estate unless the bankruptcy trustee abandons them."); Lopez v. Specialty Restaurants Corp. (In re Lopez), 283 B.R. 22, 31-32 (9th Cir. BAP 2002).  The bankruptcy trustee has the duty and authority to take actions that "maximize the value of the estate." 11 U.S.C. § 704; *Commodity Futures Trading Comm'n v. Weintraub*, 471 U.S. 343, 352, 105 S.Ct. 1986, 1993 (1985); *In re Moore*, 110 B.R. 924, 927 (Bankr. C.D. Cal. 1990); *Schnelling v. Thomas (In re AgriBioTech, Inc.)*, 319 B.R. 207, 211 (D. Nev. 2004) (trustee is required to "marshall all of the estate's property for the estate's benefit"). Indeed, the bankruptcy trustee *must* "collect and reduce to money the property of the estate." 11 U.S.C. § 704(a)(1).

Hettick was covered by the CGL policy on the date he filed his Chapter 7 case, and on that date the state court action brought against him by Tomlinson had been filed.  Any claim arising from the CGL policy became property of the estate under the broad construction of § 541(a) set forth above in *Brown* and *Henson*.

Hettick did not list the insurance policy on Schedule B, did not list claims against EMC based on its breach of the duty to defend Hettick required under the CGL policy, and did not list claims against EMC for first-party bad faith based on § 33-18-242 and § 33-18-242.  Hettick did not amend his Schedules to add the breach of contractual duty to defend and first-party bad faith claims as required under *Brown* and *Hamilton*, even though under Ninth Circuit law the "duty to disclose potential claims as assets . . . continues for the duration of the bankruptcy proceeding." *Hamilton*, 270 F.3d at 785.  Since the breach of contractual duty to defend and first-party bad faith claims were not disclosed, they were neither abandoned nor administered.  *Brown*, 363 B.R.

27

at 604-05.  The assignment by Hettick to Tomlinson of the estate's contingent and unliquidated breach of contractual duty to defend and first-party bad faith claims violates the above-quoted controlling authority, and as this Court warned EMC earlier in its memorandum entered on March 14, 2008, the fact that the assignment was not disclosed to or approved by this Court may void the assignment and leave EMC on the hook for any monies that may be owed to the bankruptcy estate stemming from Debtor's claims against EMC.

EMC argues that it satisfied Tomlinson's judgment and paid all of Hettick's fees and costs of defense, so the Trustee has not shown any damages.  In light of the undisclosed assignment of property of the estate to Tomlinson and sealed settlement between Tomlinson and EMC, which was not submitted to this Court for approval after notice and a hearing to the Trustee as required by FED. R. BANKR. P. 9019(a) and 2002(a)(3), this Court finds and concludes that EMC failed to satisfy its heavy burden to show that no genuine issue of material fact exists regarding damages.

All of the Defendants in this adversary proceeding confuse the issue by conflating the proceeds[10] from the CGL policy coverage amounts with the policies themselves.  As noted by the bankruptcy court in the Northern District of Texas:  "The *proceeds* of the Policies are entirely different from the Policies themselves or the claims made in the Trustee Suit." *Tex. Att. Gen. v. Brown (In re Fort Worth Osteopathic Hosp., Inc.)*, 387 B.R. 706, 714 (Bankr. N.D. Tex. 2008) (emphasis in original.)  As in *Fort Worth*, Hettick owned the CGL policy at case commencement, but as of the date of the filing of the petition pursuant to § 541(a)(1) "all legal or equitable

---

[10]Torgenrud also appears to have conflated the proceeds with the CGL policy's in his motion to reopen.

interests of the debtor" became property of the estate which now includes the CGL policy, and may exercise whatever right Hettick had under the CGL policy, including the right to sue EMC for breach of the contractual duty to defend and first-party bad faith.  The Trustee may expect coverage under the policy, but does not have a right to the proceeds of the CGL policy.  In the same vein, while the estate's damages from breach of the contractual duty to defend may or may not be limited by the amount of coverage under the CGL policy, which EMC appears to have paid, the estate's first-party bad faith based on statute is unrelated and not limited by the proceeds.  EMC failed to satisfy its heavy burden to show the absence of genuine issue of material fact related to the issues of the estate's damages under Counts Four and Five.

The relief asked for in Tomlinson's motion to modify stay, and the limited relief which this Court granted, was to authorize Tomlinson to pursue the proceeds of the CGL policy. Tomlinson did not ask for, and was not granted, ownership or control of the estate's first-party breach of contractual duty to defend claim, or ownership or control of the estate's first-party statutory bad faith claim.  However, those undisclosed claims were assigned to Tomlinson without notice or approval by this Court.

EMC argues that Crum's contention, that EMC paid Tomlinson to release the estate's claim against Tomlinson, is unsupported by the evidence and may violate the Court's Order on confidential materials.  This Court in its Order at Docket No. 43, page 3, wrote:

> [T]he Court will preserve the confidential nature of the sealed documents of the envelope in its possession from the public, but will review of the contents of such sealed document for the purposes of issuing any decision on any motion or any other pleading presented by the parties that requires review of such confidential material and may quote or cite any such material as the Court, in its sole discretion, may deem appropriate.

EMC's argument, that Crum's contention that EMC paid Tomlinson to release the estate's claim is unsupported by the evidence, persuades the Court that it is necessary in its discretion to review the sealed settlement and quote or cite such material to decide EMC's contention.

The sealed settlement is entitled "<u>MUTUAL RELEASE</u>."  It identifies the first party as "Kaye Tomlinson, individually and Kaye Tomlinson, on behalf of Gary J. Hettick dba H Construction."  It provides for a release of all the claims referenced in Flathead County Cause No. DV-06-662(C), including breach of contract and violation of unfair trade practices act.  A sum of the settlement is set forth, which the Court deems unnecessary to disclose, but no apportionment of the settlement amount exists between the various claims, including for the claims for breach of contract and first-party bad faith.  Based upon the Court's review, and the inclusion in the sealed settlement of Hettick's claim and their release, the Court finds that EMC's contention that no genuine issue of material fact exists regarding damages suffered by the estate is without merit.  EMC failed to satisfy its heavy burden of showing that no genuine issue of material fact exists regarding damages, it failed to shift the burden of proof to the Plaintiff, and EMC failed to show that it is entitled to summary judgment as a matter of law on Counts Four and Five.

**V.  PHS' Motion for Summary Judgment (Docket No. 40).**

PHS was employed to represent Tomlinson during the state court action, and is a Defendant named with Tomlinson in the complaint's Count One ("Turnover and Accounting of Estate Property"), Count Two ("Avoidance of and/or Liability for Unauthorized Transfer"), and Count Three ("Conversion").  PHS filed its motion for summary judgment on November 19, 2008, seeking dismissal of all of the Plaintiff's claims against PHS on the grounds that the

transfer of Debtor's claims against EMC based on breach of contract and first-party insurance bad faith are not and were not assets of the estate, that Crum is not entitled to any portion of Tomlinson's third-party bad faith damages, and that Crum is barred from claiming that Hettick's breach of contract and first-party bad faith claims are part of Hettick's bankruptcy estate.

PHS filed a statement (Docket No. 42) asserting the following alleged uncontroverted facts. which provides:

1.   In the summer of 2001, Ms. Tomlinson hired Gary Hettick (d/b/a H Construction) to build a custom house for her in Lakeside, Montana. (T. Strauch Aff., ¶ 2) (Exhibit A)[11] (PHS' Verified Answer, ¶ VII.)

2.   Ms. Tomlinson signed a construction contract with Mr. Hettick and H Construction, Inc. under which the construction cost was originally $163,500 but later amended to $164,648.00. (T. Strauch Aff., ¶ 3); (PHS' Verified Answer, ¶ VIII.)

3.   Mr. Hettick, d/b/a H Construction, was insured by EMC under a CGL insurance policy with a $500,000 "Each Occurrence," $1,000,000 "General Aggregate," $1,000,000 Products/Completed Operations Aggregate" and other limits as set forth in the policy. (T. Strauch Aff., ¶ 4); (PHS' Verified Answer, ¶ VIII.)

4.   On February 12, 2003, Ms. Tomlinson filed a civil lawsuit against Mr. Hettick, H Construction, Inc. and Washington Mutual in Flathead County, Montana, Cause No. DV-03-082(C), *Tomlinson v. Hettick et al.* PHS did not represent Ms. Tomlinson at that time. (T. Strauch Aff., ¶ 5); (PHS' Verified Answer, ¶ IX.)

5.   In her initial complaint, Ms. Tomlinson alleged that Mr. Hettick and H Construction Inc. breached the construction contract, and committed negligence and constructive fraud. (T. Strauch Aff., ¶ 6); (PHS' Verified Answer, ¶ IX.)

6.   Mr. Hettick did not file a claim under the EMC CGL policy as a result of Ms. Tomlinson's lawsuit. Moreover, neither Mr. Hettick nor any other party notified EMC of the pendency of Ms. Tomlinson's suit. (T. Strauch Aff., ¶ 7);

---

[11]Ex. A, affidavit of attorney Timothy B. Strauch, who at times represented Tomlinson, is attached to Docket No. 42.

(PHS' Verified Answer, ¶ IX.)

7.   On January 11, 2004, Mr. Hettick filed a Chapter 7 Bankruptcy Petition.  In his bankruptcy petition, Mr. Hettick listed Ms. Tomlinson as a creditor as a result of her "breach of contract/damages" in an unknown amount. (T. Strauch Aff., ¶ 8); (PHS' Verified Answer, ¶ X.)

8.   On May 11, 2004, Ms. Tomlinson filed an Adversary Complaint in Mr. Hettick's bankruptcy proceeding seeking to recover for embezzlement or larceny damages within the meaning of 11 U.S.C. § 523(a)(2)(A).  She asserted that this was a nondischargeable debt and that she had "been damaged in the sum of $51,192.40 for the non-dischargeable [embezzlement and larceny damages] of this case, but in fact her actual damages exceed that amount."  PHS did not represent Ms. Tomlinson in the adversary proceeding.  (T. Strauch Aff., ¶ 9); (PHS' Verified Answer, ¶ XII.)

9.   On July 15, 2004, the Court dismissed Ms. Tomlinson's Adversary Complaint based upon her admission that Mr. Hettick's motion to dismiss was well taken because her adversary complaint was time-barred.  (T. Strauch Aff., ¶ 10); (PHS' Verified Answer, ¶ XII.)

10.   On October 31, 2005, Mr. Strauch notified EMC of Ms. Tomlinson's state court claims against Mr. Hettick and H Construction, Inc.  Pursuant to the automatic stay, EMC had no duty to defend during the pendency of Mr. Hettick's bankruptcy until the stay was lifted even if it had been put on notice of Ms. Tomlinson's suit.  (T. Strauch Aff., ¶ 11); (PHS' Verified Answer, ¶ XIII.)

11.   After discussing the matter with Ms. Crum's predecessor, Don Torgenrud, and at his suggestion, on December 16, 2005, Ms. Tomlinson filed a motion to modify the stay, advising the Court of the pendency of Ms. Tomlinson's state court case and the existence of the EMC policy.  Specifically at Mr. Torgenrud's suggestion, the motion to lift stay stated:

> the CGL policy is not an asset of the estate or collateral for any debt, and is not subject to foreclosure or liquidation.

(T. Strauch Aff., ¶ 12); (PHS' Verified Answer, ¶ XIII.)

12.   On December 12, 2005, Mr. Torgenrud filed a consent to Ms. Tomlinson's motion to modify the stay.  (T. Strauch Aff., ¶ 13); (PHS' Verified Answer, ¶ XIII, portion thereof.)

13.   No objection to Ms. Tomlinson's motion was filed by Mr. Hettick or

any other person, including Ms. Crum's attorney's clients, David and Nicole McCue.  (T. Strauch Aff., ¶ 14); (PHS' Verified Answer, ¶ XIII.)

14.   On January 4, 2006, the Bankruptcy Court entered an Order granting Ms. Tomlinson's unopposed motion pursuant to 11 U.S.C. § 362(c)(2)(C) and (d)(2), expressly authorized Ms. Tomlinson:

> [T]o prosecute her pending claims in a civil action in Flathead County, Montana, Cause No. DV-03-082(C) [*Tomlinson v. Hettick, et al.*] to pursue her claims for recovery under a Commercial General Liability Policy issued by Employers Mutual Casualty Company to the Debtor (Policy No. 1X8812302), but not to seek recovery against the Debtor individually, in accordance with applicable nonbankruptcy law and the terms of Kaye Tomlinson's motion.

(T. Strauch Aff., ¶ 15); (PHS' Verified Answer, ¶ XIII.)

15.   On March 21, 2006, Ms. Tomlinson filed an amended complaint in *Tomlinson v. Hettick, et al.*, wherein she alleged claims of negligence, breach of contract/warranty, consumer protection (H Construction Inc. only), constructive fraud and breach of implied good faith (H Construction Inc. only).  (T. Strauch Aff., ¶ 16); (PHS' Verified Answer, ¶ IX.)

16.   EMC, despite having notice of Ms. Tomlinson's state court claim and order lifting the stay, refused to provide a defense in *Tomlinson v. Hettick*, to Mr. Hettick and H Construction Inc.  As a result of this failure, Mr. Hettick and H Construction, Inc. failed to file an Answer to Tomlinson's First Amended Complaint filed after the stay was lifted.  (T. Strauch Aff., ¶ 17); (PHS' Verified Answer, ¶ XIII.)

17.   The Clerk of Court entered a default judgment in *Tomlinson v. Hettick et al.*  Thereafter, EMC belatedly agreed to defend Mr. Hettick and H Construction, Inc. pursuant to a reservation of rights.  (T. Strauch Aff., ¶ 18); (PHS' Verified Answer, ¶ XIII.)

18.   On June 19, 2006, the Honorable Stewart Stadler held an evidentiary hearing on Ms. Tomlinson's motion for entry of default judgment.  Mr. Hettick, H Construction, Inc. and EMC each appeared through counsel at the hearing.  Judge Stadler announced from the bench during the hearing that he would be entering a default judgment against Mr. Hettick and H Construction, Inc. (T. Strauch Aff., ¶ 19); (PHS' Verified Answer, ¶ XIII.)

33

19.  On June 27, 2006, Mr. Hettick and H Construction, Inc., through EMC's appointed counsel, moved the Bankruptcy Court to rescind its prior order modifying the stay and to order that the default judgment in *Tomlinson v. Hettick et al.* be vacated.  In their motion, Mr. Hettick and H Construction, Inc. asserted that Ms. Tomlinson's pursuit of the CGL policy proceeds constituted "discharged pre-petition claims."  (T. Strauch Aff., ¶ 20); (PHS' Verified Answer, ¶ XIII.)

20.  On July 6, 2006, Ms. Tomlinson responded to Mr. Hettick and H Construction, Inc.'s motion.  In her response, she again asserted that "the CGL policy was not an asset of the bankruptcy estate" and that the Bankruptcy Court had the authority under *In re Beeney*, 142 B.R. 360, 362 (9th Cir. 1992) to allow her to pursue the CGL proceeds.  (T. Strauch Aff., ¶ 21); (PHS' Verified Answer, ¶ XIII.)

21.  Ms. Crum's predecessor and her current attorney were, once again, given notice and the opportunity to be heard on this issue.  Neither objected nor exercised his right or his clients' right to be heard.  (T. Strauch Aff., ¶ 22); (PHS' Verified Answer, ¶ XIII.)

22.  On July 14, 2006, Judge Stadler entered Findings, Conclusions and a Judgment (dated July 5, 2006) in Ms. Tomlinson's favor against Mr. Hettick and H Construction, Inc. in the amount of $622,478.19, plus costs.  He also awarded Ms. Tomlinson her attorney fees against H Construction, Inc.  (T. Strauch Aff., ¶ 23); (PHS' Verified Answer, ¶ XIII.)

23.  On August 7, 2006, the Bankruptcy Court sustained Ms. Tomlinson's objection to Mr. Hettick and H Construction, Inc.'s motion.  It reiterated its prior decision granting Ms. Tomlinson the right to pursue *Tomlinson v. Hettick et al.* for the express purpose of recovering money under the CGL policy.  The Bankruptcy Court had been provided a copy of Judge Stadler's July 14, 2006 Judgment before making this ruling.  (T. Strauch Aff., ¶ 24); (PHS' Verified Answer, ¶ XIII.)

24. On August 21, 2006, EMC filed a declaratory judgment action in state court against Mr. Hettick and Ms. Tomlinson, *EMC v. Hettick and Tomlinson*, asserting that it had no duty to defend or indemnify Hettick in *Tomlinson v. Hettick et al.*  EMC did not obtain an order lifting the stay as to Mr. Hettick before filing the declaratory judgment action.  (T. Strauch Aff., ¶ 25); (PHS' Verified Answer, ¶ XIII.)

25.  Around the same time, Mr. Hettick's attorney, Mr. Berkoff, offered Ms. Tomlinson an assignment of Mr. Hettick and H Construction, Inc.'s rights under the EMC policy in exchange for her agreement to amend the *Tomlinson v.*

*Hettick et al.* default judgment by dismissing all claims and relief against H Construction, Inc.  (T. Strauch Aff., ¶ 26); (PHS' Verified Answer, ¶ XIII.)

26.  Mr. Berkoff also contacted Ms. Crum's attorney, Mr. Rhoades, to advise him what EMC intended to do in *Tomlinson v. Hettick et al.*  In addition, Mr. Berkoff made the same assignment offer to Mr. Rhoades' clients, the McCues, since they had a judgment against Mr. Hettick.  (T. Strauch Aff., ¶ 27); (PHS' Verified Answer, ¶ XIII.)

27.  On September 11, 2006, Mr. Hettick and H Construction, Inc., executed a detailed Assignment in favor of Ms. Tomlinson.  Neither Mr. Hettick nor EMC obtained the Bankruptcy Court's approval prior to giving the Assignment to Ms. Tomlinson.  The Assignment provided, in relevant part, the following terms and conditions:

A.  Hettick hereby assigns to Tomlinson all of his rights, demands, actions, causes and claims he might have against EMC existing by reason of the contract and policy or the relationship between Hettick and EMC as insured and insurer, including, but not limited to, breach of contract, failure to defend and indemnify Hettick in *Tomlinson v. Hettick*, negligence, bad faith, violation of the Montana Unfair Trade Practices Act, fraud, breach of fiduciary duties or other theory of recovery, as those claims relate to the Judgment entered in *Tomlinson v. Hettick*.  However, Hettick specifically reserves any and all claims against EMC, including those claims for failure to defend and indemnify and for violation of §§ 33-18-201 and 242, Montana Code Annotated, and common law claims for bad faith, as those claims apply to the non-discharged judgment against Hettick secured by David J. and Nicole McCues, Cause No. 04-60081-RB.

B.  In the event of a final ruling by a court holding that any portion or all of assignment made in § A of this Agreement is ineffective or invalid, the rights assigned which have been held to be ineffective or invalid shall revert to Hettick AND Hettick shall personally pursue collection of the Judgment in Tomlinson v. Hettick against EMC for Tomlinson's benefit through final litigation.  In the event this paragraph takes effect, Hettick agrees to allow Tomlinson's attorneys to pursue his rights which were assigned in § A for Tomlinson's benefit and hereby waives any conflict of interest or potential conflict of interest which may be asserted by any party, whomsoever.  Hettick agrees that, in the event this paragraph takes effect, the sole and primary duty of

Tomlinson's attorneys shall be to use best efforts to collect the Judgment against EMC for Tomlinson's sole benefit, under the terms of the existing contingency fee agreement between Tomlinson and her attorneys.

\* \* \* \*

Attorney's Fees.  In the event that either party thereafter shall find it necessary to retain an attorney and/or institute legal proceedings to enforce, modify, or interpret any provision of this Agreement, the Court shall award reasonable attorney's fees and costs to the prevailing party, in addition to any other appropriate relief.

\* \* \* \*

Severability.  If any term of this Agreement shall be found by a court of competent jurisdiction to be illegal or otherwise unenforceable, the same shall not invalidate the whole of the Agreement, but such term or provision shall be deemed modified to the extent necessary in the Court's opinion to render such term or provision enforceable, and the rights and obligations of the parties shall be construed and enforced accordingly, preserving to the fullest permissible extent of the agreements of the parties herein set forth.

(T. Strauch Aff., ¶ 28); (PHS' Verified Answer, ¶s XIII. and XIV.)

28.  On October 12, 2006, Mr. Torgenrud filed his final bankruptcy report. (T. Strauch Aff., ¶ 29); (PHS' Verified Answer, ¶ II.)

29.  On October 16, 2006, Ms. Tomlinson filed an answer and counterclaim in the EMC state court declaratory judgment action.  The counterclaim asserted Ms. Tomlinson's rights to collect her judgment against Mr. Hettick from EMC as permitted by the two orders of the Bankruptcy Court.  Ms. Tomlinson's counterclaim also sought damages for third-party bad faith by Ms. Tomlinson in her own right and for first-party bad faith, as assigned by Mr. Hettick.  (T. Strauch Aff., ¶ 30); (PHS' Verified Answer, ¶ XVI.)

30.  Ms. Tomlinson's third-party bad faith claims included the monetary losses proximately caused by EMC's denial of Mr. Hettick's claim, including losses resulting from the delay in payment of Ms. Tomlinson's claim against Mr. Hettick, Ms. Tomlinson's permanent loss of her "dream house" in a spectacular location, emotional distress damages and tax effect damages.  (T. Strauch Aff., ¶ 31) (PHS' Answers to Ms. Crum's Interrogatory 12 and Interrogatory 13, 10/06/08.)

31.  The District Court fixed Ms. Tomlinson's economic damages resulting from Hettick's actionable conduct in the judgment in the underlying case at $522,478.19.  The District Court also fixed Ms. Tomlinson's emotional distress damages in the underlying case at $100,000.  Ms. Tomlinson thus sought to recover the entire amount of the judgment in the underlying case in the amount of $622,478.19 as third-party bad faith damages.  Ms. Tomlinson asserted that [sic] an additional $219,440.84 in adverse tax consequences as third-party bad faith damages.  (T. Strauch Aff., ¶ 32) (PHS' Answers to Ms. Crum's Interrogatory 12 and Interrogatory 13, 10/06/08.)

32.  In addition to Ms. Tomlinson's economic third-party bad faith damages, Ms. Tomlinson also claimed general third-party bad faith damages.  These additional third-party bad faith general damages were $619,877.42.  (T. Strauch Aff., ¶ 33) (PHS' Answers to Ms. Crum's Interrogatory 12 and Interrogatory 13, 10/06/08.)

33.  Ms. Tomlinson also sought third-party bad faith punitive damages against EMC.  (T. Strauch Aff., ¶ 34) (PHS' Answers to Ms. Crum's Interrogatory 12 and Interrogatory 13, 10/06/08.)

34.  On November 19[12], 2006 a final decree in the Bankruptcy Court was entered discharging Mr. Hettick[13].  (T. Strauch Aff., ¶ 35) (PHS' Verified Answer, ¶ II.)

35.  On November 22, 2006, pursuant to the terms of the Assignment, an Amended Judgment in *Tomlinson v. Hettick et al.* was entered, *Nunc Pro Tunc* to July 14, 2006.  The Amended Judgment, in pertinent part, provided:

> THAT JUDGMENT in the amount of $622,478.19 plus costs BE AND HEREBY IS ENTERED in favor of Tomlinson and against Gary Hettick individually and d/b/a H Construction, in order to allow Plaintiff to pursue claims against Hettick's insurer, but not to be enforced against him individually, pursuant to the Bankruptcy Court's Order lifting the stay.

(T. Strauch Aff., ¶ 36) (PHS' Verified Answer, ¶ XIV.)

36.  On July 13, 2007, the District Court ruled on Ms. Tomlinson's and EMC's

---

[12]According to the case docket, the final decree was entered on November 15, 2006.

[13]Hettick received a discharge of debtor on May 11, 2004.  Torgenrud was discharged as Trustee by the final decree.

respective cross motions for summary judgment in *EMC v. Hettick and Tomlinson*. It held, in relevant part, that:

> The Court has found that Employers had a duty to defend and is estopped from liability on the grounds of noncoverage, therefore, Employers is liable for the full amount of the judgment in the underlying claim [*Tomlinson v. Hettick*] attorney fees and costs. Employers did not address Tomlinson's arguments that she is entitled to interest on the underlying judgment and for her attorney fees in this matter pursuant to the Montana Uniform Declaratory Judgment Act, Section 27-8-313, MCA, which provides that the court can grant further relief based on a declaratory judgment whenever necessary or proper.  Tomlinson is, therefore, entitled to interest on the judgment and her fees from this action as well.

(T. Strauch Aff., ¶ 37) (PHS' Verified Answer, ¶ XVI.)

37.  Ms. Tomlinson's Judgments in *Tomlinson v. Hettick* and *EMC v. Hettick and Tomlinson* belong to her individually, and she and only she had any interest in any recovery thereon.  (T. Strauch Aff., ¶ 38) (PHS' Verified Answer, ¶ XVI.)

38.  Ms. Tomlinson was entitled to a minimum recovery of $991,803.88, based on the District Court's July 13, 2007, summary judgment ruling for indemnification under the liability policy, plus interest and attorneys fees.  (T. Strauch Aff., ¶ 39) (PHS' Verified Answer, ¶ XVI.)

39.  Ms. Tomlinson's minimum recovery is exactly what the Bankruptcy Court authorized in its Orders of January 4, 2006 and August 7, 2006.  (T. Strauch Aff., ¶ 40) (PHS' Verified Answer, ¶ XVI.)

40.  In September 2007, Ms. Tomlinson and EMC settled the *EMC v. Hettick and Tomlinson* action pursuant to a confidential agreement.  As of that date, Ms. Tomlinson's indemnification and third-party bad faith claims totaled a minimum of $1,831,122.14 itemized as follows:

> a.  The entire amount of the $622,478 judgment in *Tomlinson v. Hettick*, plus judgment interest on that judgment in *Tomlinson v. Hettick* from July 14, 2006 until the anticipated trial date of November 1, 2007 for a total of $708,431.34, plus;

> b.  Attorney fees on the total amount of the judgment in *Tomlinson v. Hettick* at 40% per the written contingency fee agreement in the amount of $283,372.54, plus;

c.  Third-party bad faith economic damages in the amount of $219,440.84 resulting from the obligation to pay 42% federal income tax on the $522,478.19 in economic damages awarded in *Tomlinson v. Hettick*, plus; and

d.  Third-party bad faith general damages in the amount of $619,877.42 representing 63% of the $708,431.34 Judgment (plus interest) awarded in *Tomlinson v. Hettick.*

(T. Strauch Aff., ¶ 41.)

41.  Thereafter, Ms. Tomlinson filed a Satisfaction of Judgment in *Tomlinson v. Hettick et al.,* and all claims in *EMC v. Hettick and Tomlinson* were dismissed with prejudice.  (T. Strauch Aff., ¶ 42) (PHS' Verified Answer, ¶ XVI.)

42.  On December 6, 2007, Mr. Torgenrud rejected the proposition that the estate had any claim to the EMC liability proceeds.  (T. Strauch Aff., ¶ 43.)

In response, the Trustee Crum filed a statement asserting the following genuine issues of

fact (Docket No. 55):

1.  Paragraph 11 of PHS' Statement of Uncontroverted Facts ("SUF") is based on hearsay statements said to have been made by Donald Torgenrud that are not admissible under Fed.R.Evid. 802, and therefore cannot be considered under Fed.R.Civ.P. 56(e) and F.R.B.P. 7056.

2.  Paragraph 26 of PHS' SUF is based on hearsay statements said to have been made by David Berkoff that are not admissible under Fed.R.Evid. 802, and therefore cannot be considered under Fed.R.Civ.P. 56(e) and F.R.B.P. 7056.  In addition, the facts are contested by the Affidavit of Quentin M. Rhoades filed in *In re Hettick*, Case No. 04-60081-RBK-7, Dkt. No. 66, Ex. 7, of which the Court is requested to take judicial notice per Fed.R.Evid. 201.

3.  Paragraph 29 of PHS' SUF characterizes the content of a document – in particular Kaye Tomlinson's counterclaim – that are otherwise available. Paragraph 29 is thus inadmissible under the Best Evidence Rule of Fed.R.Evid. 1002, and therefore cannot be considered under Fed.R.Civ.P. 56(e) and F.R.B.P. 7056.  In addition, it mis-characterizes the content of the document.  The counterclaims Ms. Tomlinson asserted in the case were Debtor's first-party claims against the insurer, not her tort and contract claims against Debtor which were the subject of the two orders of the Bankruptcy Court referred to in the paragraph.

4.  Paragraph 30 of PHS' SUF are characterizations of hearsay statements

said to have been made by Kaye Tomlinson that are not admissable [sic] under Fed.R.Evid. 802, and therefore cannot be considered under Fed.R.Civ.P. 56(e) and F.R.B.P. 7056.

    5.  Paragraph 31 of PHS' SUF characterizes the content of a document – a state district court order of unknown date – that is, if it exists, otherwise available. Paragraph 31 is thus inadmissible under the Best Evidence Rule of Fed.R.Evid. 1002, and therefore cannot be considered under Fed.R.Civ.P. 56(e) and F.R.B.P. 7056.  In addition, rather than facts, it states legal conclusions regarding the apportionment of the seven figure sum Tomlinson recovered from EMC as first-party damages.  This is a legal opinion that is for the Court to resolve as a matter of law.  If it is offered for the resolution of a factual issue, it is opinion testimony not admissible under Fed.R.Evid. 701, and therefore not appropriate for consideration on summary judgment.  In addition, the apportionment of damages averred by PHS is contradicted by Defendant [EMC]'s Answers to Interrogatory No. 7, Interrogatory No. 8, Interrogatory No. 9, and Interrogatory No. 10, dated October 14, 2008, attached hereto as Exhibit 1; Defendant Kaye Tomlinson's Amended Answers to Interrogatory No. 7, Interrogatory No. 8, Interrogatory No. 9, and Interrogatory No. 10, dated November 21, 2008, attached hereto as Exhibit 2; and PHS' own Answers to Interrogatory No. 7, Interrogatory No. 8, Interrogatory No. 9, and Interrogatory No. 10, dated October 6, 2008, attached hereto as Ex. 3.

    6.  Paragraph 32 of PHS' SUF, like paragraph 31, seeks to apportion, by implication, the amount recovered from EMC for third-party damages.  Rather than facts, it states legal conclusions regarding the apportionment of the damages at issue.  This is a legal opinion that is for the Court to resolve as a matter of law. If it is offered for the resolution of a factual issue, it is inadmissible opinion testimony not admissible under Fed.R.Evid. 701, and therefore not appropriate for consideration on summary judgment.  In addition, the apportionment of damages averred by PHS is contradicted by Defendant [EMC]'s Answers to Interrogatory No. 7, Interrogatory No. 8, Interrogatory No. 9, and Interrogatory No. 10, dated October 14, 2008, attached hereto as Exhibit 1; Defendant Kaye Tomlinson's Amended Answers to Interrogatory No. 7, Interrogatory No. 8, Interrogatory No. 9, and Interrogatory No. 10, dated November 21, 2008, attached hereto as Exhibit 2; and PHS' own Answers to Interrogatory No. 7, Interrogatory No. 8, Interrogatory No. 9, and Interrogatory No. 10, dated October 6, 2008, attached hereto as Ex. 3.

    7.  Paragraph 37 of PHS' SUF, rather than facts, states legal conclusions regarding the nature and apportionment of the damages at issue.  This is a legal opinion that is for the Court to resolve as a matter of law.

8.   Paragraphs 38 and 39 of PHS' SUF states, rather than facts, legal conclusions regarding the nature and apportionment of the damages at issue.  This is a legal opinion that is for the Court to resolve as a matter of law.

9.   Paragraph 40 PHS' SUF, like paragraph 31 and 32, seeks to apportion the amount recovered from EMC for first party and third-party damages.  Rather than facts, it states legal conclusions regarding the apportionment of the damages at issue.  This is a legal opinion that is for the Court to resolve as a matter of law.  If it is offered for the resolution of a factual issue, it is inadmissible opinion testimony not admissible under Fed.R.Evid. 701, and therefore not appropriate for consideration on summary judgment.  In addition, the apportionment of damages averred by PHS is contradicted by Defendant [EMC]'s Answers to Interrogatory No. 7, Interrogatory No. 8, Interrogatory No. 9, and Interrogatory No. 10, dated October 14, 2008, attached hereto as Exhibit 1; Defendant Kaye Tomlinson's Amended Answers to Interrogatory No. 7, Interrogatory No. 8, Interrogatory No. 9, and Interrogatory No. 10, dated November 21, 2008, attached hereto as Exhibit 2; and PHS' own Answers to Interrogatory No. 7, Interrogatory No. 8, Interrogatory No. 9, and Interrogatory No. 10, dated October 6, 2008, attached hereto as Ex. 3.

10.   Paragraph 42 of PHS' Statement of Uncontroverted Facts ("SUF") is based on hearsay statements said to have been made by Donald Torgenrud that are not admissible under Fed.R.Evid. 802, and therefore cannot be considered under Fed.R.Civ.P. 56(3) and F.R.B.P. 7056.

Crum's statement of genuine issues is accompanied by three exhibits consisting of EMC's responses to Plaintiff's first discovery requests, Tomlinson's amended responses to Plaintiff's first combined discovery requests, and PHS' responses to Plaintiff's discovery requests.

Crum also filed a motion to strike (Docket No. 58) certain paragraphs 12, 27, 32 and 33 of the affidavit of Timothy B. Strauch which was filed attached to PHS' statement of uncontroverted facts (Docket No. 42).  Crum objected on the grounds that the paragraphs 12 and 27 of Strauch's affidavit are based on hearsay statements of other persons and cannot be considered under Rule 56(e), that paragraph 32 is not the best evidence and states legal conclusions or opinions and not facts, and that paragraph 33 also states legal conclusions not

facts.  PHS filed a response to Crum's motion to strike (Docket No. 67).  PHS responded that the predecessor Trustee Torgenrud's statements to Strauch are admissions excepted from hearsay by Fed. R. Evid. 801(d)(2), that Strauch has personal knowledge of Tomlinson's underlying claims as a result of his representation of Tomlinson, and that the Court can take judicial notice of the pleadings, orders and documents previously admitted.

In addition to Crum's genuine issues of fact, EMC filed a response and objection (Docket No. 51) to PHS' statement of uncontroverted facts, in particular calling alleged fact Nos. 16 and 17 unsupported by competent evidence and inaccurate.  EMC contends that it was not notified of the order granting stay relief before the default was entered against Hettick, as alleged in No. 16. EMC also disputes as unsupported by evidence and speculation the statements in PHS' alleged fact Nos. 26 and 27 that attorney David Berkoff represented EMC or that EMC was involved in preparing the assignment between Tomlinson and Hettick.  PHS responded to EMC in Docket No. 67, at page 3, stating that Strauch's supplemental affidavit[14] corrects typographical errors and/or clarifies Berkoff's representation of Hettick which were in Strauch's original affidavit at paragraphs 17, 27 and 28, but that paragraph 18 was not supplemented since it is accurate.

PHS filed an "Amended Statement of Uncontroverted Facts" (Docket No. 65), accompanied by Strauch's original and supplemental affidavit, a letter to Rhoades from Torgenrud (Ex. 22), and a copy of the EMC CGL policy (Ex. 23).  PHS' Amended Statement includes the following changes to PHS' original alleged uncontroverted facts:

16.  Mr. Hettick and H Construction, Inc. failed to file an Answer to Ms. Tomlinson's First Amended Complaint filed after the stay was lifted.

---

[14]Ex. B attached to Docket No. 65.

42

In its July 13, 2007 Order, the District Court held in relevant part as follows:

> Employers [EMC] refused to defend and Hettick's default and a default judgment were entered.  During this time period Hettick filed for personal bankruptcy.  After entry of the default judgment, Employers stepped in with counsel and attempted to get the district court and bankruptcy court to vacate the default judgment.  These attempts were unsuccessful.  However, the parties subsequently settled the case and a *nunc pro tunc* amended judgment was entered.

(T. Strauch Supp. Aff., ¶ 48) (PHS' Verified Answer, ¶ XIII.)

* * * *

26.  Mr. Berkoff also contacted Ms. Crum's attorney, Mr. Rhoades, to advise him what Mr. Hettick[15] intended to do in *Tomlinson v. Hettick et al.*  In addition, Mr. Berkoff made the same assignment offer to Mr. Rhoades' clients ....

27.  On September 11, 2006, Mr. Hettick and H Construction, Inc. executed a detailed Assignment in favor of Ms. Tomlinson.  Mr. Hettick[16] did not obtain the Bankruptcy Court's approval prior to giving the assignment to Ms. Tomlinson. ....

PHS' amended statement also added references to Strauch's supplemental affidavit at paragraph nos. 29, 30, 31, 32, 37, 38, 39, 40, and 42, but otherwise did not amend those alleged uncontroverted facts.

### Contentions.

PHS' brief contends that Tomlinson's judgments in the state court case and declaratory judgment action belong to her individually, and only she had any interest in any recovery.  PHS contends that when Tomlinson reached the confidential settlement with EMC it was for her claims for indemnity and third-party bad faith plus attorney fees and costs, economic damages

---

[15]The change in No. 26 is that Hettick is substituted for EMC in the original No. 26.

[16]The original No. 27's second sentence began:  "Neither Mr. Hettick nor EMC ...."

including adverse tax consequences, and emotional distress from loss of her dream home, which PHS argues total $1,831,122.14 in damages, and none of the settlement was for Hettick's claims.

With respect to Tomlinson's third-party bad faith claims, PHS contends they never were assets of Hettick or the estate. PHS argues that the CGL insurance proceeds are not estate assets, that Tomlinson was granted relief from the stay to proceed against the policy proceeds, and that Crum's predecessor Torgenrud rejected the proposition that the estate had any claim to the CGL policy proceeds when he consented to Tomlinson's motion to modify stay and its language that the policy is not an asset of the estate. PHS argues that Torgenrud's consent was a judicial admission that the CGL policy proceeds were not estate assets, and that Tomlinson relied on that admission. PHS also cites Torgenrud's December 6, 2007, letter in which he rejected the proposition that the estate had any claim to the CGL proceeds, and PHS argues that Crum is barred from reversing that position by the doctrines of claim preclusion, judicial estoppel and law of the case.

PHS cites longstanding bankruptcy law that the estate has no greater rights in property than what the debtor owned pre-bankruptcy, and argues that Hettick's first-party bad faith and breach of contract claims against EMC must have accrued prior to the petition date in order to be considered property of the estate, citing *Brown*, while property a debtor accrues post-petition, including causes of action, belongs to the debtor. PHS contends that Hettick's claim against EMC for breach of the CGL policy by failing to defend him, and Hettick's first-party bad faith claims, arose after the filing of the petition and therefore are not estate assets.

PHS argues that until the Court lifted the stay EMC had no duty to defend Hettick against Tomlinson's state law claims because the state court action was subject to the automatic stay

44

until it was lifted post-petition on January 5, 2006, and prior to that Hettick had no claim against EMC until it refused to defend him.  As a result, PHS argues, the breach of contract and first-party bad faith claims which Hettick assigned to Tomlinson were post-petition claims which are not assets of the estate, Hettick was free to assign them to Tomlinson and those claims were extinguished in the confidential settlement which she reached with EMC, and therefore PHS is entitled to judgment as a matter of law.

Crum objects to PHS' motion for summary judgment on the grounds that the breach of contract and first-party bad faith choses-in-action which Hettick transferred to Tomlinson post-petition were unscheduled assets which are subject to turnover, and that the fruits of Tomlinson's release of the estate's claims are voidable transfers under 11 U.S.C. § 549(a).  Crum notes that Hettick failed to amend his schedules to list the choses-in-action, and no one filed a motion to abandon them.  Crum argues that Tomlinson prosecuted Debtor's breach of contract claim against EMC in the state declaratory judgment action and won a judgment, then released Debtor's claims in the confidential settlement and kept all the settlement proceeds to the detriment of the estate's other creditors.

Crum cites this Court's decision in *Brown* defining the broad scope of "property of the estate" under § 541(a).  She argues that claims arising from post-petition breach of a pre-petition contract can be property of the estate if they are sufficiently rooted in the debtor's pre-bankruptcy past, citing *In re Caldor, Inc. – NY*, 240 B.R. 180, 192 (Bankr. S.D. N.Y. 1999), because "[i]t is within the fair contemplation of parties entering into a contract that the other party may breach it ...." (Quoting *In re Russell*, 193 B.R. 568, 571 (Bankr. S.D. Cal. 1996).  Crum cites *Rau v. Ryerson (In re Ryerson)*, 739 F.2d 1423, 1425 (9th Cir. 1984) where the Ninth Circuit held that

45

choses-in-action and claims against parties as of the commencement of the case are property of the estate, "clearly" including rights of action based on contract even though they may be contingent and not subject to possession until some future time.

Crum contends that insurance contracts are no different and that the estate is worth more with EMC's duty to defend Hettick than without it because it can be used to pay defense costs, defeat meritless claims and limit payment on other claims to protect the interest of the creditors. Crum argues that EMC's breach of its duty and Hettick's bad faith claims are sufficiently rooted in Debtor's prebankruptcy past to make them assets of the estate which should be used to pay all creditors, not just Tomlinson.

Crum agrees that the estate has no ownership of Tomlinson's third-party claims, but contends that $991,803.88 of the settlement amount was attributable to the state court's adjudication of EMC's breach of duty to defend and that amount should be apportioned to Debtor's first-party claim for breach of duty to defend. Crum argues that PHS' employment and its fee were never approved by this Court, and PHS kept the settlement secret from the Trustee so PHS' entire fee should be disgorged for the benefit of creditors whose interest PHS tried to thwart.

Crum argues that PHS failed to satisfy the elements required to bar the Trustee's claims for relief under the theories of law of the case, and judicial estoppel based on Torgenrud's consent to Tomlinson's motion to modify the stay which stated that the CGL policy is not an asset of the estate. She argues that the elements for judicial estoppel listed in *New Hampshire v. Maine*, 552 U.S. 742, 750-51, 121 S.Ct. 1808, 149 L.Ed.2d 968 (2001) are not shown because Torgenrud's positions were not clearly inconsistent and Torgenrud did not prevail, and that the

Trustee would not derive an unfair advantage or impose an unfair detriment upon PHS by seeking to recover an unscheduled asset of the estate for the welfare of all the creditors where the Court made no ruling, in granting Tomlinson relief from the stay, on whether a claim against EMC based on breach of a duty to defend was an estate asset. Finally, Crum argues that the doctrine of law of the case cannot apply because there has not been a decision in the appellate court in the same case, citing *United States v. Thrasher*, 483 F.3d 977, 981 (9th Cir. 2007).

PHS replies that Hettick was never entitled to a single penny of the proceeds from the CGL policy, but that Crum is trying to profit from Hettick's wrongdoing while Tomlinson was authorized by two orders of this Court to recover from the CGL policy. PHS argues that Torgenrud considered whether the insurance proceeds could be property of the estate and concluded they were not, but that Crum now distorts the law and reality by claiming that the proceeds of the liability policy are estate property. PHS cites *Witko v. Menotte (In re Witko)*, 374 F.3d 1040, 1042-44 (11th Cir. 2004) for the rule that where the debtor had sustained no pre-petition harm as a result of pre-petition conduct, the cause of action did not exist at the time of the bankruptcy petition and is not property of the estate, but is for the debtor to pursue.

PHS distinguishes *Ryerson* because the money to which the debtor became entitled after the filing of his petition was pre-petition earnings. PHS distinguishes *Brown* because Hettick's rights to defense were not an interest in future income because he was not entitled to proceeds of the CGL policy. PHS argues that the elements of the Montana accrual test set forth in *Brown* are not all rooted in the pre-bankruptcy past. PHS argues that Hettick's claim based on failure to defend arose after the filing of this petition, as did any first-party bad faith claim, and are not estate assets and Hettick was free to assign the choses-in-action to Tomlinson.

47

PHS reply repeats its arguments that claim preclusion, judicial estoppel and law of the case all bar Crum's claims because Torgenrud consented to Tomlinson's motion to modify stay which stated that the estate had no equity interest in the policy and the policy is not an asset of the estate. PHS argues that it and Tomlinson relied on the orders granting relief from the stay and discussions with Torgenrud, and therefore the Trustee would derive an unfair advantage and detriment if not estopped from asserting that the CGL policy is an asset of the estate. PHS asks for summary judgment as a matter of law.

### Brown, et al.

The Court's references to *Brown, Hamilton* and *Henson* above in the discussion of EMC's motion for summary judgment, and its conclusions, apply equally and dispose of PHS' contentions regarding the scope of property of the estate under § 541(a). Like EMC, the Court finds that PHS has failed its heavy burden under summary judgment of showing that there are no genuine issues of material fact and that it is entitled to judgment as a matter of law.

The CGL policy was owned by Hettick on the date he filed his bankruptcy petition, and on that date pursuant to § 541(a) "all" of the Debtor's legal and equitable interests became property of the estate. Under Ninth Circuit authority the Debtor was required to disclose the CGL policy along with all other assets, including contingent and unliquidated claims, for the duration of the bankruptcy. *Hamilton,* 270 F.ed at 785. The Debtor was the insured on the CGL policy on the petition date, and all legal and equitable interests therefrom became property of the estate, even if the Debtor was unaware of its existence. *Brown*, 363 B.R. at 604-05. Since the CGL policy was not disclosed in the Schedules, and the breach of contract and first-party bad faith claims based on the CGL policy were not disclosed by amendment, they were not

48

abandoned or administered and remain property of the estate.  *Id.*

Crum agrees that the estate has no ownership of Tomlinson's third-party claims, so many of PHS' arguments about the damages incurred on those claims and how they were apportioned are inapposite to its motion for summary judgment on Counts One, Two and Three, which are concerned with the unauthorized transfer or conversion of the estate's claims for breach of contractual duty to defend and first-party bad faith.  PHS' contention that the sealed settlement between Tomlinson and EMC does not encompass the estate's claims has been shown without merit in the discussion of EMC's motion above.  The sealed settlement plainly involves settlement by Tomlinson, on behalf of Hettick, of claims for breach of contract and violation of unfair trade practices, and releases those claims, which are property of the estate, without the settlement having been submitted to this Court for review after notice and hearing as required by Rule 9019(a) and Rule 2002(a)(3).  The amount of the settlement is not apportioned, and therefore as above, viewing the evidence and inferences therefrom in the light most favorable to the party opposing summary judgment, *Healthcentral.com*, 504 F.3d at 788, the Court finds that PHS failed to satisfy its heavy burden that there is no genuine issue of material fact regarding the estate's damages from unauthorized disposition of property of the estate.

Pursuant to § 541(a)(1), the estate, on the date of commencement of the case, acquired "all" of the Debtor's legal and equitable interests in the CGL policy, and any claim arising therefrom based on breach of the duty to defend or first-party bad faith.  *Brown*, 363 B.R. at 604.  Thus, under the CGL policy, and in addition for purposes of § 33-18-242(1), the estate became the "insured" as of the commencement of the case.  PHS argues at length about how the breach of contract and first-party bad faith claims did not accrue until postpetition, but neither PHS nor

49

any of the other Defendants describe any mechanism, or any authority, by means of which the estate's interest in and rights under the CGL policy were transferred back to Hettick.

Section 541(a)(1)'s effect does not last just for the duration of the date of commencement of the case, but rather commences on that date and, where assets are not scheduled, they are not abandoned and pass to the trustee even though the case is closed. *Brown*, 363 B.R. at 604-05 (citing cases). The CGL policy, and claims arising thereunder based on breach of the contractual duty to defend and first-party bad faith, never reverted to Hettick because he no longer was the insured under the CGL policy after the petition date, and never listed the CGL policy or claims. Thus, regardless of when the breach of contractual duty to defend and first-party bad faith accrued, Hettick was no longer the insured. Hettick had no more interest in or rights under the CGL policy and claims arising thereunder than any other debtor has a right to property of the estate postpetition.

The CGL policy, breach of contractual duty to defend and first-party bad faith claims were not listed in Debtor's Schedules. The Trustee did not administer those claims by sale under § 363(b) which requires notice and a hearing. The Trustee did not abandon the claims under § 554, which requires notice and a hearing. The Trustee did not convey the claims to Hettick in a settlement which was disclosed to the Court and approved after notice and a hearing required under Rule 9014(a) and Rule 2002(a)(3). Based upon the failure to satisfy these requirements for disclosure and notice, Hettick simply had no interest in the estate's claims based on the CGL policy to assign to Tomlinson after the commencement of the case.

PHS cites *Brown* in arguing that Hettick's first-party bad faith and breach of contract claims against EMC must have accrued prior to the petition date in order to be considered

50

property of the estate, while property a debtor accrues post-petition, including causes of action against EMC based on the CGL policy arose after the filing of the petition and therefore are not estate assets.  This contention fails because the CGL policy was an asset of the estate on the date of commencement of the case, and was never disclosed or administered so Hettick never recovered any rights as the insured under the CGL policy, regardless of when the choses-in-action accrued.

*Brown* sets forth the rule in this district regarding when a cause of action accrues:

> To determine when a cause of action accrues, and therefore whether it accrued pre-bankruptcy and is an estate asset, the Court looks to state law, *Cusano*, 264 F.3d at 947, but it is important to distinguish between accrual of an action for purposes of ownership in a bankruptcy proceeding and accrual for purposes of the statute of limitations. *Id.*, *citing, In re Swift*, 129 F.3d 792, 796, 798 (5th Cir. 1997).  In *Cusano*, the Court stated:

>> We conclude that Cusano's open book account claim accrued for bankruptcy purposes to the extent that sums were owed on that account at the time he filed his petition.  An action could have been brought for those sums at that time.  Our conclusion is not affected by the fact that limitations on such an action had not yet begun to run.

> *Cusano*, 264 F.3d at 947.  Other courts have used Cusano's "could have been brought" formulation in determining when a cause of action is property of the estate, obviously because if a claim "could have been brought" – or here, has been brought – it has accrued.  *See, e.g., In re Student Finance Corp.*, 335 B.R. 539, 546-547 (D.Del. 2005)(because it is property of the estate under §541(1)(a), "the trustee of a bankrupt debtor may bring any cause of action that the debtor could have brought under state law as of the commencement of the estate"); *In re Bailey*, 306 B.R. 391, 392 (Bankr. D.Colo. 2004)("In a chapter 7 bankruptcy case, any unliquidated lawsuits initiated by a debtor prepetition (or that could have been initiated by the debtor prepetition) become part of the bankruptcy estate....").

> Although the inquiry as to when an action accrues is different from an inquiry as to when the statute of limitations begins to run, *Cusano, supra*, "it is often necessary to look to state law on the statute of limitations to determine when a cause of action accrues because accrual rarely is discussed apart from the issue

of the running of the statute of limitations." *Matter of Swift*, 129 F.3d 792, 796, fn. 18 (5th Cir. 1997). The reason for this is apparent – it would be a futile act to file a complaint before there was any claim to pursue. In Montana, MONT. CODE ANN. ("MCA") § 27-2-102(1)(a) provides, "a claim or cause of action accrues when all elements of the claim or cause exist or have occurred, the right to maintain an action on the claim or cause is complete, and a court or other agency is authorized to accept jurisdiction of the action ... ." *See also Watkins Trust v. LaCosta*, 2004 MT 144 , ¶ 52, 321 Mont. 432, ¶ 52, 92 P.3d 620, ¶ 52 (statute of limitations does not begin to run until all elements of a claim, including damages, have occurred). In *Bergin v. Temple*, 111 Mont. 539, 111 P.2d 286, (1941), in discussing the meaning of "arose" for purposes of a venue statute, the Court defined "accrued" in a manner similar to the Ninth Circuit in *Cusano* (action accrues when "[a]n action could have been brought for those sums at that time". In *Bergin*, the Montana Supreme Court stated:

> Thus a cause of action arises when it springs up, originates, comes into being, becomes operative, presents itself. In this connection it is equivalent to the definition of "accrue" by the above authority as "to come into existence as an enforceable claim; to vest as a right; as, a cause of action has accrued when the right to sue has become vested." Obviously if a cause of action exists,– if it has matured or accrued so as to permit suit, it would be impossible to say that the cause of action has not yet arisen.

*Bergin*, 111 P.2d at 289.

Under Montana law and under *Cusano*, a claim accrues when an action can be brought. Applying *Cusano* and *Bergin*, where loan closings occurred pre-petition, and a cause of action has been filed based on pre-petition wrongdoings, then appealed to the Montana Supreme Court, remanded, and pursued to settlement, it "would be impossible to say" that it has not yet accrued. All the elements were in place to bring a lawsuit against Associates at the time the debtors signed their loan papers at the date of their respective loan closings, irrespective of whether the debtors appreciated the legal significance of those events. They had, therefore accrued claims and could have sued immediately after closing for breach of the MCLA for the illegal fees ("points") charged by Associates, or for fraud or misrepresentation by reason of Associates holding out in the loan documents its right to charge and collect those illegal fees. Nothing in the similar state court decision entered by the Honorable John W. Whelan in *Costello v. Beneficial*, Montana Second Judicial District Court, Case No. DV-03-280 (April 26, 2006), refutes the accrual, *i.e.*, existence, of those clams at the time of loan closing.

> Thus, Debtors' claims accrued as of the time that their loans closed, since the events occurring at closing are the very facts upon which the claims were pursued and settled.

*Brown*, 363 B.R. at 605-06.

This quotation highlights perhaps the weakest part of Crum's position.  EMC has stated that EMC had no knowledge of Tomlinson's state court action against Hettick until after the commencement of the case.  However, viewing the evidence and inferences therefrom in the light most favorable to the party opposing summary judgment, *Healthcentral.com*, 504 F.3d at 788, the Court finds that PHS failed to satisfy its heavy burden that there is no genuine issue of material fact regarding whether the claims for breach of contractual duty to defend and first-party bad faith arising under the CGL policy are property of the estate based on accrual.

The CGL policy became property of the estate on the date of commencement of the case. The policy, and claims for breach of contractual duty to defend and first-party bad faith, were not scheduled and were not sold, abandoned or administered pursuant to the requirements of the Bankruptcy Code.  The CGL policy never, therefore, reverted to Hettick, and he had no interest in the CGL policy, or claims for breach of contractual duty to defend and first-party bad faith as the "insured," to assign.  *Brown*, 363 B.R. at 605-05.

PHS contends that EMC had no duty to defend because of the automatic stay.  While that may have been a practical effect of the stay, EMC was not the debtor and the stay did not relieve it of its duty to defend under the CGL policy or the requirements of § 33-18-201.  Certainly Judge Stadler decided in the declaratory judgment action that EMC had a duty to defend when it entered partial summary judgment.

53

Section 541(a)(7) includes as property of the estate "[a]ny interest in property that the estate acquires after the commencement of the case."  In *Brown* this Court wrote the following excerpt which provides the answer to the issue of whether claims which accrue post-petition are property of the estate:

> In a case decided under the prior Bankruptcy Act, the U.S. Supreme Court held that a postpetition payment is estate property if it is "sufficiently rooted in the pre-bankruptcy past." *Segal v. Rochelle*, 382 U.S.375, 380 (1966).  In a case decided before *Cusano*, the Ninth Circuit applied *Segal* under the new Bankruptcy Code to determine that the future and contingent "contract value" of an insurance agent in an Appointment Agreement attributable to pre-filing services was property of the estate even though no right to collect those amounts had accrued as of the time of filing.  *In re Ryerson,* 739 F.2d 1423, 1426 (9th Cir. 1984); *see also Field v. Transcontinental Ins. Co.*, 219 B.R. 115, 119 (E.D.Va. 1998), *aff'd*, 173 F.3d 424 (4th Cir. 1999)(under *Segal*, a cause of action "sufficiently rooted in [Debtors'] pre-bankruptcy past" is property of the estate regardless of whether it has accrued as of the time of filing).

*Brown*, 363 B.R. at 607-08.

Based on the facts that the CGL policy was property of the estate as of the commencement of the case, that Tomlinson had initiated the state court action against Hettick prepetition, and the estate thereafter had the right to defense under the CGL policy and the protections under MCA § 33-18-201, the Court concludes that these choses-in-action are sufficiently rooted in the Debtor's pre-bankruptcy past to constitute property of the estate regardless of whether they accrued as of the time of filing.  *Brown*, 363 B.R. at 607-08.  The Court finds and concludes that PHS failed to satisfy its burden under summary judgment to show that there is no genuine issue of material fact regarding whether the breach of contractual duty to defend based on the CGL policy and first-party bad faith claims are property of the estate.

PHS argues that Torgenrud's statements and consent to Tomlinson's motion to modify

stay have an estoppel effect against Crum's claims for relief.  The Court will examine the estoppel theories below, but notes that in light of Hettick's failure to list the CGL policy, breach of contract claim and first-party bad faith claims in the Schedules, and failure to amend to list those claims, the Court deems it would be an inequitable result to bar Crum's claims based on estoppel.

The Ninth Circuit explained the doctrine of judicial estoppel in *Hamilton*:  "Judicial estoppel is an equitable doctrine that precludes a party from gaining an advantage by asserting one position, and then later seeking an advantage by taking a clearly inconsistent position. *Rissetto v. Plumbers & Steamfitters Local 343*, 94 F.3d 597, 600-01 (9th Cir. 1996; *Russell v. Rolfs*, 893 F.2d 1033, 1037 (9th Cir. 1990)."  270 F.3d at 782.  Factors a court may consider include:  First, a party's later position must be "clearly inconsistent" with its earlier position; second, whether the party succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create the perception that the court was misled; and third, whether the party asserting an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped.  *Hamilton*, 270 F.3d at 782-783, quoting *New Hampshire v. Maine*, 552 U.S. 742, 750-51, 121 S.Ct. 1808, 149 L.Ed.2d 968 (2001).  Considering these factors the Court concludes that PHS failed its burden under all three.

The Trustee consented to Tomlinson's motion to modify stay, agreeing that the policy was not property of the estate.  The motion was not contested.  Even so the Court limited the relief it granted to Tomlinson, authorizing Tomlinson to pursue her claims for recovery against EMC based on the CGL policy, but not to seek recovery against Hettick individually.  The Court

was not asked to, and did not grant, Tomlinson relief from the stay to exercise control over the estate's rights in the CGL policy, which is different from the proceeds of the policy, *Fort Worth*, 387 B.R. at 714, or the estate's claims for breach of contractual duty to defend and first-party bad faith.

Torgenrud's position consenting to relief from the stay to allow Tomlinson to pursue her own claims against the CGL policy was not "clearly inconsistent" with Crum's position now. Furthermore, Torgenrud changed his opinion when he reopened the case. The Court granted limited relief from the stay, and did not accept Torgenrud's earlier position so that acceptance of Crum's position would create the perception that the Court was misled because the Court was not misled. Third, Crum would not derive an unfair advantage or impose an unfair detriment on PHS or Tomlinson if not estopped. On the contrary, applying judicial estoppel against Crum would be inequitable to the estate and prevent her from recovering property of the estate which  was not disclosed or administered in accordance with the Bankruptcy Code and Rules, which cannot be dispensed with simply by a trustee's mistaken assertion. Judicial estoppel would not be appropriate or equitable to apply.

"Under the law of the case doctrine, a court is ordinarily precluded from reexamining an issue previously decided by the same court, or a higher court, in the same case." *Hydrick v. Hunter*, 500 F.3d 978, 986 (9th Cir. 2007), quoting *Richardson v. United States*, 841 F.2d 993, 996 (9th Cir. 1988). For law of the case to apply the issue in question must have been decided explicitly or by necessary implication in the previous disposition, and law of the case acts as a bar only when the issue in question was actually considered and decided by the first court. *Hydrick*, 500 F.3d at 986 (citing cases).

Tomlinson did not move for relief from the stay to pursue the estate's claims for breach of contractual duty to defend and first-party bad faith.  Rather Tomlinson moved for relief to pursue her own claims against Hettick.  The issue of whether Tomlinson could proceed against the estate's claims for breach of contractual duty to defend and first-party bad faith, which along with the CGL policy were not listed in Hettick's Schedules, was not presented, was not consented to by Torgenrud, was not decided explicitly or by necessary implication in the Court's limited relief it granted Tomlinson to proceed on her own claims against Hettick in the state court action against the proceeds of the CGL policy.  *Hydrick*, 500 F.3d at 986.  The Court finds that PHS failed to satisfy its burden to show that the factors required to apply the law of the case doctrine are present.

The same failure defeats PHS' contention that the doctrine of claim preclusion applies. Claim preclusion provides that a final judgment on the merits bars further claims by parties or their privies based on the same cause of action.  *U.S. v. Bhatia*, 545 F.3d 757, 759 (9th Cir. 2008), quoting *United States v. Schimmels (In re Schimmels)*, 127 F.3d 875, 881(9th Cir.1997) (other citations omitted).  The related doctrine of collateral estoppel, or issue preclusion, provides that "when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit."  *Bhatia*, 545 F.3d at 759, quoting *Ashe v. Swenson*, 397 U.S. 436, 443, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970).  The Ninth Circuit noted that the Supreme Court recently clarified that "claim preclusion" and "issue preclusion" are collectively referred to as "res judicata".  *Bhatia*, 545 F.3d at 759 n.2, quoting *Taylor v. Sturgell*, __ U.S. __, 128 S.Ct. 2161, 2171, 171 L.Ed.2d 155 (2008).

PHS argues that claim preclusion bars Crum's claims because Torgenrud consented to

Tomlinson's motion to modify stay which stated that the estate had no equity interest in the policy and the policy is not an asset of the estate. Again, the proceeds of the policy are not the same as the policy. *Fort Worth*, 387 B.R. at 714. Tomlinson moved for and was granted, without opposition and with the Trustee's consent, limited relief from the stay to pursue her own claims against the CGL policy coverage proceeds. She did not seek relief to pursue the estate's undisclosed and unscheduled claims for breach of contractual duty to defend or first-party bad faith. That issue was not disclosed, was not contested or litigated, was not the ultimate fact, and was not determined by a valid and final judgment by this Court. PHS failed to show that the requirements for claim preclusion are present. *Bhatia*, 545 F.3d at 759.

In conclusion with respect to PHS' motion, having viewed the evidence and inferences therefrom in the light most favorable to the party opposing summary judgment, *Healthcentral.com*, 504 F.3d at 788, the Court concludes that PHS failed its burden under Rule 56(c) to show that there are no genuine issues of material fact and that PHS is entitled to summary judgment dismissing Counts One, Two and Three of the complaint as a matter of law. With this conclusion and denial of PHS' motion, Crum's motion (Docket No. 58) to strike statements offered in support of PHS' motion will be denied as moot.

**VI. Tomlinson's Motion for Summary Judgment (Docket No. 48)**.

Tomlinson moved for summary judgment on December 2, 2008, requesting dismissal of Counts One, Two and Three of Plaintiff's complaint against Tomlinson on the grounds there are no genuine issues of material fact and she is entitled to judgment as a matter of law. Tomlinson's motion is accompanied by her statement of uncontroverted facts (Docket No. 50),

which asserts facts identical to PHS' original statement[17] of uncontroverted facts (Docket No. 42) set forth in full above, except for some added references to Tomlinson's Answer[18].

In response Crum filed a statement of genuine issues (Docket No. 63) which incorporated the genuine issues she filed in response to PHS' statement (Docket No. 55), set forth above.

### Contentions.

Tomlinson moves for summary judgment on the grounds that the Debtor's first-party bad faith and breach of contract claims were clearly not property of the estate under § 541 as of the commencement of the case, and the estate acquired no interest in Hettick's claims after the commencement of the case. Tomlinson argues that the estate's interests in Hettick's claims are determined under Montana law, and property that the Debtor acquired postpetition, including his breach of contract and first-party bad faith claims against EMC, belongs to the Debtor. Looking at state law under *Brown*, causes of action accrue when an action can be brought, and Tomlinson argues that Hettick's bad faith claims could not have been brought until well after the commencement of the bankruptcy and so are not estate assets.

Tomlinson cites *Peris v. Safeco Inc. Co.* (1996), 276 Mont. 486, 492, 916 P.2d 780, 784, as authority that a settlement need not be approved or a judgment entered before an insured can file a first-party bad faith claim under § 33-18-242, unlike a third-party bad faith claim. Tomlinson argues that Hettick's claims accrued under Montana law when a party has a right to institute a legal proceeding, and she argues that Hettick had no claim under § 33-18-201, or

---

[17]Tomlinson's statement does not include the changes made in PHS'amended statement of facts (Docket No. 65).

[18]Tomlinson's uncontroverted fact Nos. 1, 3, 7, and 8, all include references to Tomlinson's Answer. Nos. 7 and 8 also refer to the complaint.

breach of contract, until EMC had an obligation to defend and refused, which Tomlinson

contends was not until it was put on notice of the Tomlinson suit on October 31, 2005, and the

automatic stay was lifted on January 4, 2006, almost 2 years postpetition, when Tomlinson

argues Hettick's first-party bad faith accrued.  Since Hettick had no pre-petition right to sue EMC

for bad faith, Tomlinson argues, his claim was not an asset of the estate and he was free to assign

the claim to Tomlinson.

Further, Tomlinson argues that the estate did not acquire an interest in Hettick's claims

after the commencement of the case under § 541(a)(7).  Tomlinson argues that Hettick acquired

his bad faith claim after the commencement of the case and his first-party bad faith claim did not

become property of the estate.  With respect to the CGL policy, Tomlinson repeats PHS'

argument that the Trustee's consent to Tomlinson's motion to modify stay with the language that

the policy is not an asset of the estate was made in a judicial proceeding, and so bars Crum from

reversing that position by judicial estoppel, claim preclusion and law of the case, citing

*Hamilton*, 270 F.3d 778.

Crum objects to Tomlinson's motion.  Crum argues that Tomlinson is just another

creditor of the estate, with no lien or priority rights to Hettick's breach of contract or first-party

bad faith claims because judgment was entered against Hettick not after an actual trial and not

after an agreed settlement signed by EMC, so Tomlinson had no direct individual right to

payment of the CGL policy proceeds.  With respect to Hettick's breach of contract claim and

first-party bad faith claim, Crum argues that the assignment was not authorized and they remain

assets of the estate to which Tomlinson has no greater claim than any other creditor, other than

perhaps her contract sum of $167,000.  Crum cites *Brown* and other cases for the proposition that

60

property of the estate may include future and contingent interests, and a contingent interest is one that may never accrue, citing *Siegel v. Federal Home Loan Mortgage Corp.*, 143 F.3d 525, 532 (9th Cir. 1998).  Crum repeats her earlier arguments that the contract rights such as the duty to defend are valuable because they protect the interests of bona fide creditors from spurious claims.

Crum argues that a breach of contract claim is contingent from the date the contract is entered into, not the date of the breach, and that contractual duties arising from the insurance contract, and choses-in-action resulting therefrom, whether pre- or postpetition, such as Debtor's CGL policy with EMC, belong to the estate and the proceeds should be turned over.  With respect to Hettick's first-party bad faith claim, Crum argues that it arose from the CGL policy and so is an asset of the estate because it is sufficiently rooted in the bankruptcy past and because Hettick had the duty to disclose the claim for the duration of the proceeding, citing *Hamilton*, 270 F.3d at 785.

Crum argues that Hettick's contingent right to coverage under the CGL policy arose prepetition at the instant of the casualty, and any bad faith claims arising from EMC's handling were estate assets, citing *Field*, 219 B.R. at 119.  Because Hettick assigned his breach of contract and first-party bad faith claims without listing them or his CGL policy in his Schedules, and without any authorization from this Court or the Trustee, the claims remain property of the estate and any part of the settlement apportionable to those claims are estate assets under § 541 and the assignment to Tomlinson is subject to avoidance and turnover.

Crum contends that Hettick's claims were not scheduled, and so were not abandoned based only on Torgenrud having been told of Hettick's claims against EMC, and the claims remain subject to the Trustee's administration.  Finally, Crum argues that the equities favor

61

turnover because the default judgment of $622,478.19 which Tomlinson received, plus the further amounts paid by EMC, far exceed her original stated damages of $52,000 and the small amount distributed to the other creditors, to the point it is monumentally unfair, and Crum argues that the proceeds of the estate assets should be brought into the estate to pay a significant dividend to all the creditors.

In reply Tomlinson asks that her motion for summary judgment be granted because Hettick's first-party bad faith claim was not an asset of the estate, and because Tomlinson was never fully compensated for her third-party bad faith claim which was independent of Hettick's first-party bad faith claim.  Tomlinson argues that she had direct rights against EMC as a third-party beneficiary of the CGL policy with a judgment against the insured, and that the portion of the settlement which was for Tomlinson's third-party bad faith claim is beyond recovery.

Tomlinson argues that her damages are res judicata by the hard won judgment against Hettick and cannot be collaterally attacked as a windfall, nor can Tomlinson's default judgment in the declaratory judgment action be attacked because EMC and Hettick opposed the hearing on damages after entry of default, and the state court denied Tomlinson's request for treble damages. Tomlinson argues that the result would have been the same had she never obtained the assignment from Hettick of his breach of contract and first-party bad faith claims, which she says she accepted "out of an abundance of caution," because of the size of the partial summary judgment she won in the declaratory judgment action and her judgment against Hettick, the total of which far exceeds the amount of the confidential settlement.

With respect to Hettick's first-party bad faith claim, Tomlinson argues that it was rooted in postpetition conduct by EMC and therefore is not property of the estate.  Although Tomlinson

admits that the date the CGL policy was issued was prior to the petition date, she argues that Hettick's claims did not exist until EMC refused to defend Hettick, which occurred after the petition date, and are not sufficiently rooted in the pre-bankruptcy past to be assets of the estate.

**Disposition.**

In the sections above deciding EMC's and PHS' motions for summary judgment the Court set forth the controlling law in this district, *Brown*, 363 B.R. at 604-05, 607-08, which rejected their contentions that the breach of EMC's contractual duty to defend Hettick and first-party bad faith were not property of the estate under § 541(a)(1).  The Court above concluded that Hettick's claim against EMC for breach of contractual duty to defend under the CGL policy and first-party bad faith claim are property of the estate, and that those claims were not sold, abandoned or transferred pursuant to a settlement after the notice and hearing as required under § 363(b), § 554, Rule 9019(a) and other applicable Rules.  The same authority cited in *Brown* provides the reasoning for the Court to reject Tomlinson's similar contentions and arguments. The CGL policy is property of the estate, and Hettick's breach of contractual duty to defend claim arising from the CGL policy, and first-party bad faith claims based on MCA §§ 33-18-242 and 33-18-201, are sufficiently rooted in the pre-bankruptcy past to be property of the estate. *Brown*, 363 B.R. at 607-08.

The Debtor had an affirmative duty to disclose all assets, including the CGL policy and contingent and unliquidated claims, and that duty to disclose potential claims as assets continued for the duration of the bankruptcy proceeding under controlling Ninth Circuit authority. *Hamilton*, 270 F.3d at 785.  Tomlinson failed to show how Hettick retained or retrieved from the estate any interest in or rights under the CGL policy after the commencement of the case.  Hettick

was no longer the "insured" under the CGL policy for purposes of § 33-18-242 after the commencement of the case, and had no right to assign estate property to Tomlinson.

Tomlinson contends that she obtained the assignment of Hettick's first-party claims out of an abundance of caution.  In the Court's view, however, if Tomlinson wanted to exercise due caution she would have approached the Trustee of the estate, which owned all the Debtor's interest in the CGL policy and first-party claims, and presented a request to the Court for approval of an assignment of those claims after notice to the parties and a hearing as required under applicable Bankruptcy Code sections and rules.

Because of the attempted unauthorized transfer of undisclosed property of the estate, without notice to the Trustee or the Court, and the limited relief from the stay which the Court granted Tomlinson to pursue her own claims, the Court declines Tomlinson's request to bar the Trustee's claims based on judicial estoppel, claim preclusion and law of the case, for the same reasons set forth above in the section denying PHS' motion.  Tomlinson failed to satisfy the elements of judicial estoppel, claim preclusion and law of the case, and application of any of those three doctrines would be inequitable.

Furthermore, preclusion is a double edged sword.  In the Ninth Circuit, "[t]his court has held that a debtor who failed to disclose a pending claim as an asset in a bankruptcy proceeding where debts were *permanently* discharged was estopped from pursuing such a claim in a subsequent proceeding.  *Hay*, 978 F.2d at 557."  *Hamilton,* 270 F.3d at 784 (emphasis in original).  Tomlinson received from the Debtor, Hettick, an assignment of claims based on the CGL policy, including breach of contractual duty to defend and first-party bad faith, none of which were disclosed by Hettick in his Schedules.  Hettick received a discharge.  Under the

Ninth Circuit holding in *Hamilton* Hettick would be judicially estopped from pursuing such claims in a subsequent proceeding. 270 F.3d at 784. Since Tomlinson was assigned the claims by the Debtor, in subsequent proceedings the court should consider whether Tomlinson is barred by judicial estoppel from pursuing such claims as would be the Debtor. *Id.*

In conclusion with respect to Tomlinson's motion, having viewed the evidence and inferences therefrom in the light most favorable to the party opposing summary judgment, *Healthcentral.com*, 504 F.3d at 788, the Court concludes that Tomlinson failed to satisfy her burden under Rule 56(c) to show that there are no genuine issues of material fact and that Tomlinson is entitled to summary judgment dismissing Counts One, Two and Three of the complaint as a matter of law.

## CONCLUSIONS OF LAW

1. This Court has jurisdiction in this adversary proceeding under 28 U.S.C. § 1334(b) & (e).

2. Plaintiff's adversary complaint includes both core proceedings under 28 U.S.C. § 157(b)(2), and non-core proceedings. Counts One, Two and Three of Plaintiff's complaint are core proceedings. Counts Four and Five are noncore proceedings.

3. Defendants PHS and EMC have demanded trial by jury. The Plaintiff does not object, and PHS and EMC are entitled to trial by jury of the claims against them. Neither PHS and EMC expressly consent to this Bankruptcy Court conducting a jury trial of Counts One, Two, Three, Four, and Five, as required by 28 U.S.C. § 157(e).

4. Judicial economy requires that the trial of Counts One, Two and Three of Plaintiff's complaint against Tomlinson and PHS be heard and decided in a single trial to avoid duplication

and inconsistent results from separate trials.

5. This Court sees no reason to exercise its discretion to retain jurisdiction over any further pretrial matters, under *Healthcentral.com*, 504 F.3d at 788.

6. EMC failed to satisfy its heavy burden of proof required for dismissal under Rule 12(b)(6) of Counts Four and Five of Plaintiff's complaint, for failure to state a claim upon which relief can be granted. Counts Four and Five both contain a short and plain statement of the claim showing that the pleading is entitled to relief, give EMC fair notice of what the Plaintiff's claims are and the grounds upon which they rest, and provide the factual specificity required to raise a right to relief above the speculative level.

7. EMC failed to satisfy its burden of proof under Rule 56(c) of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law on Counts Four ("Breach of Duty to Defend") and Count Five (Independent statutory duty to defend under MCA § 33-18-242(4) for violation of MCA § 33-18-201).

8. Defendant PHS failed to satisfy its burden of proof under Rule 56(c) of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law on Counts One ("Turnover and Accounting of Estate Property"), Two ("Avoidance of and/or Liability for Unauthorized Transfer") and Three ("Conversion"). Plaintiff's motion to strike statements in support of PHS' motion is moot.

9. Defendant Kaye Tomlinson failed to satisfy her burden of proof under Rule 56(c) of showing that there is no genuine issue of material fact and that she is entitled to judgment as a matter of law on Counts One, Two, and Three ("Conversion").

10. PHS and Tomlinson failed to satisfy their burden of proving the elements required

under the doctrines of judicial admission, law of the case, and claim preclusion.

11.  The claim set forth and alleged in Count Four of the complaint for first-party breach of contractual duty to defend is property of the estate under 11 U.S.C. § 541(a).  The claim set forth in Count Five for first-party bad faith against EMC is property of the estate under § 541(a).

12.  The claim for first-party breach of contractual duty to defend, and the claim for first-party statutory bad faith, both were not disclosed in or subject to Tomlinson's motion to modify stay, were not subject to this Court's orders granting relief from the stay and affirming relief from the stay which authorized Tomlinson to pursue her own claims for recovery against the proceeds of the CGL insurance policy.

12.  The estate's claim for first-party breach of contractual duty to defend, and the claim for first-party statutory bad faith, were not listed in the Debtor's bankruptcy schedules; were not abandoned by the estate under 11 U.S.C. § 554 and F.R.B.P. Rule 6007 after notice and a hearing as required; were not sold by the Trustee to the Debtor under 11 U.S.C. § 365(b)(1) after notice and a hearing required under F.R.B.P. Rules 2002(a)(2) or (a)(3), 6004; and were not otherwise transferred to the Debtor or to Tomlinson by settlement which was approved by this Court after notice and a hearing required under F.R.B.P. 9019(a) or as otherwise required under the Bankruptcy Code and Rules for disposition of property of the estate.

Pursuant to the foregoing, a separate order setting forth the following order will be entered:

**IT IS ORDERED** pursuant to 28 U.S.C. § 157(c) (1) the Clerk shall transmit this Memorandum, Proposed Findings of Fact and Conclusions of Law, and the confidential materials filed under seal, to the United States District Court for the District of Montana, Missoula

Division, after the objection time allowed by FED R. BANKR. P. 9033(b) expires, for a final order after considering these Proposed Findings of Fact and Conclusions of law and after reviewing de novo those matters to which any party timely and specifically objects, as provided at 28 U.S.C. § 157(c)(1); and all future proceedings in this adversary proceeding are referred to the district court for trial by jury in accordance with the unopposed demands for jury trial filed by EMC and PHS.

**IT IS FURTHER ORDERED** Plaintiff's request for this Court to retain jurisdiction for pretrial matters on core matters is denied in the interests of judicial economy.

**IT IS FURTHER ORDERED** Plaintiff's motion to strike (Docket No. 58) will be denied as moot by separate Order.

BY THE COURT

HON. RALPH B. KIRSCHER
U.S. Bankruptcy Judge
United States Bankruptcy Court
District of Montana